JUL 25 2025 PM 4:03
FILED - USDC - FLMD - TPA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

POPCORNED PLANET, INC.,

    Movant,

v.                                     Case No.: 8-25-MC-28-WFJ-LSG

BLAKE LIVELY,

    Respondent,

_____/

## NON-PARTY POPCORNED PLANET'S MOTION TO QUASH SUBPOENA

Non-party Popcorned Planet, Inc. ("Popcorned Planet"), pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure, hereby moves to quash the subpoena served by Plaintiff Blake Lively ("Plaintiff") and states as follows:

### Introduction

The Movant herein, Popcorned Planet, Inc., ("Popcorned Planet"), was served with a third-party subpoena issued by Respondent Blake Lively, who is the Plaintiff in a matter pending in the Southern District of New York, styled *Lively v. Wayfarer Studios, LLC, et al,* Case No. 1:24-cv-10049-LJL (consolidated with 1:25-cv-00449-LJL). Popcorned Planet, which is located in Tampa, FL, is a non-party to that action. Pursuant to the subpoena, compliance is to take place on July 23, 2025, in Tampa, FL. Pursuant to Federal Rule of Civil Procedure 45(d)(3), Popcorned Planet respectfully requests that this Court quash the subpoena as it seeks disclosure of privileged materials protected under the Journalist's Privilege, subjects Popcorned

1

Planet to undue burden in violation of Federal Rule of Civil Procedure 45(d)(3)(A), and exceeds permissible discovery under Federal Rule of Civil Procedure 26.

The subject subpoena (a copy of which is attached hereto as Exhibit "A") commands Popcorned Planet to produce seven enumerated categories of documents/materials, as follows:

> 1. All Documents and Communications reflecting or concerning any statements or drafts provided to You by any of the Wayfarer Defendants or their counsel, including in connection with the below-depicted Google Document and other Google Documents or co-working platforms (including without limitation Google Drive, Google Docs, Microsoft OneDrive, Dropbox, Box, iCloud Drive, and Sharepoint).
>
> 2. All Documents and Communications concerning any Agreements (draft or final) You have with anyone, including but not limited to counsel for the Wayfarer Parties, that were effective at any point from May 1, 2024 through the present, without regard to the date of drafting or execution, concerning the Consolidated Action, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Digital Campaign, the Marketing Plan, the Film.
>
> 3. All agreements (draft or final) you have with anyone, including but not limited to counsel for the Wayfarer Parties, that were effective at any point from May 1, 2024 through the present, without regard to the date of drafting or execution, concerning the Consolidated Action, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Digital Campaign, the Marketing Plan, the Film.
>
> 4. All Documents and Communications regarding Your digital, online, Content Creator, or influencer services or strategy concerning the Consolidated Action, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Digital Campaign, the Marketing Plan, the Film, in connection with or on behalf of the Wayfarer Defendants or their counsel. For the avoidance of doubt, this request includes circumstances in which any Wayfarer Defendant or their counsel, or anyone acting on their behalf, provided You with any information that You included or relied on in any of Your content, on whole or in part, including but not limited to as a blind item.
>
> 5. All Documents and Communications concerning any statements, talking points, scripts, theories, assertions, questions, advertisements,

claims or similar—including preparation, revision, and timing of publication thereof—concerning the Consolidated Action, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Digital Campaign, the Marketing Plan, the Film, that were made in connection with or on behalf of Wayfarer Defendants or their counsel. For the avoidance of doubt, this request includes circumstances in which any Wayfarer Defendant or their counsel, or anyone acting on their behalf, provided you with a statement, a script, talking points, or any other information You included or relied on in any of Your content, in whole or in part, including but not limited to as a blind item.

6. All Documents and Communications reflecting or concerning any Payment, gift, or favor related to or resulting from any formal or informal Agreement or understanding with any of the Wayfarer Defendants or their counsel, or anyone acting on their behalf, concerning any content You created or shared concerning Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, the Digital Campaign, the Marketing Plan, the Film, or Your public statements or Your views regarding the same.

7. All Documents and Communications between You and any Wayfarer Defendant, their counsel, or anyone on their behalf concerning Ms. Lively, Mr. Reynolds, the Digital Campaign, the Marketing Plan, the Film, or the Consolidated Action.

For the reasons set forth more fully below, each of the above requests is shielded from production pursuant to the "reporter's privilege/journalist's privilege," and is otherwise beyond the scope of permissible discovery under Rule 45(d) and Rule 26(b) as the information is readily available from parties to the originating case by way of traditional discovery requests. Accordingly, the subpoena should be quashed by this Court.

**Argument**

I. **The Subpoena Impermissibly Seeks Disclosure of Privileged Materials**

Federal Rule of Civil Procedure 45(d)(1) provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ.

3

P. 45(d)(1). Further, "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.*

Rule 45(d)(3) sets forth the circumstances under which a court is required to quash a subpoena, stating as follows in relevant part:

> **(3) Quashing or Modifying a Subpoena.**
>
> > **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> >
> > ...
> >
> > **(iii)** *requires disclosure of privileged or other protected matter*, if no exception or waiver applies; or
> >
> > **(iv)** subjects a person to *undue burden*.

Fed. R. Civ. P. 45(d)(3) (emphasis added).

The subpoena served upon Popcorned Planet impermissibly seeks materials that are protected from disclosure under three independent categories of "reporter's privilege" explicitly recognized by Florida courts.

### A. The Florida Reporter's Privilege

The protection of confidential sources is fundamental to Florida's public policy and is recognized by three distinct legal doctrines: 1) Florida common law, 2) Florida's statutory shield law, and 3) the First Amendment as applied by the Eleventh Circuit and Florida courts.

i) <u>The Common Law Privilege</u>: The Florida Supreme Court first established a qualified reporter's privilege deriving from the First Amendment over four decades

4

ago in *Morgan v. State*, 337 So. 2d 951 (Fla. 1976). The Florida Supreme Court subsequently acknowledged the existence of a qualified reporter's privilege under Florida common law as well. *See State v. Davis*, 720 So. 2d 220, 227 (Fla. 1998) ("we hold that a qualified reporter's privilege exists in Florida and that such a privilege extends to both confidential *and* nonconfidential information gathered in the course of a reporter's employment") (emphasis in original);[1] *Tribune Co. v. Huffstetler*, 489 So. 2d 722, 723-24 (Fla. 1986). "[O]nce the privilege attaches, a court must apply the three-prong balancing test used by an overwhelming majority of other states to determine whether the privilege will act to prevent the disclosure of the reporter's information." *Davis*, 720 So.2d at 227. Thus, where the privilege has been invoked, disclosure of the requested information is precluded unless the requesting party is able to establish that: "(1) the reporter possesses relevant information; (2) the same information is not available from alternative sources; and (3) the movant has a compelling need for any information the reporter may have." *Id.* at 227.

ii) <u>The Florida Shield Law</u>: Florida's statutory "journalist's privilege," enacted in 1998,[2] provides as follows, in relevant part:

**(1) Definitions.**—For purposes of this section, the term:

(a) "News" means information of public concern relating to local, statewide, national, or worldwide issues or events.

(b) "Professional journalist" means a person regularly engaged in collecting, photographing, recording, writing, editing, reporting, or

---

[1] The *Davis* Court also recognized the common law qualified reporter's privilege as a distinct legal doctrine existing independent of the legislatively created "journalist's privilege" under Fla. Stat. § 90.5015, and noted that its holding was nevertheless "consistent with" the statutory privilege. *Davis*, 720 So. 2d at 227-28.

[2] Chapter 98-48, Laws of Florida; Codified as Section 90.5015, Florida Statutes.

5

publishing news, for gain or livelihood, who obtained the information sought while working as a salaried employee of, or independent contractor for, a newspaper, news journal, news agency, press association, wire service, radio or television station, network, or news magazine. Book authors and others who are not professional journalists, as defined in this paragraph, are not included in the provisions of this section.

**(2) Privilege.—** A professional journalist has a qualified privilege not to be a witness concerning, and *not to disclose the information, including the identity of any source*, that the professional journalist has obtained while actively gathering news. This privilege applies only to information or eyewitness observations obtained within the normal scope of employment and does not apply to physical evidence, eyewitness observations, or visual or audio recording of crimes. *A party seeking to overcome this privilege must make a clear and specific showing that*:

(a) The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought;

(b) The information cannot be obtained from alternative sources; and

(c) A compelling interest exists for requiring disclosure of the information.

**(3) Disclosure.—** A court shall order disclosure pursuant to subsection (2) only of that portion of the information for which the showing under subsection (2) has been made and shall support such order with *clear and specific findings made after a hearing*.

**(4) Waiver.—** A professional journalist does not waive the privilege by publishing or broadcasting information.

**(5) Construction.—** This section must not be construed to limit any privilege or right provided to a professional journalist under law.

Fla. Stat. § 90.5015 (emphasis added).

In sum, the statute defines a "professional journalist" as someone regularly engaged in news-related activities for compensation and defines "news" as information of public interest concerning issues or events of various scopes. Fla. Stat. § 90.5015(1). The statute provides journalists with a qualified privilege against being

6

compelled to disclose information, including confidential sources, gathered during the normal course of their news gathering activities. A party seeking to overcome the statutory privilege must satisfy the three enumerated requirements under subsection (2), which are nearly identical to the requirements of the common law privilege's three-prong test. Fla. Stat. § 90.5015(2)(a)-(c). The statutory privilege, however, imposes a heavy evidentiary burden on the party seeking disclosure, requiring that each prong be established by a "clear and specific showing" to overcome privilege, and requiring courts to support any order requiring disclosure with "clear and specific findings" following a hearing. Fla. Stat. § 90.5015(2)-(3).

iii) <u>The First Amendment Privilege</u>: The Eleventh Circuit also acknowledges a First Amendment-based privilege protecting reporters' confidential sources. To overcome this privilege, the requesting party must provide "substantial evidence[:]: that the challenged statement was published and is both factually untrue and defamatory; [2] that reasonable efforts to discover the information from alternative sources have been made and that no other reasonable source is available; and [3] that knowledge of the identity of the informant is necessary to proper preparation and presentation of the case." *Miller v. Transamerican Press, Inc.*, 628 F.2d 931, 932 (5th Cir. 1980) (per curiam) ("*Miller II*");[3] accord *Price v. Time, Inc.*, 416 F.3d 1327 (11th Cir. 2005); *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986).

**B. Popcorned Planet is Entitled to Invoke the Reporter's Privilege**

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions issued by the 5th Circuit before September 30, 1981, the date on which the former Fifth Circuit was divided into the Fifth and Eleventh Circuits.

Popcorned Planet is unquestionably entitled to invoke Florida's statutory Shield Law (i.e., "Journalist's Privilege" Law), as well as the common-law and constitutional privileges recognized by both state and federal courts in Florida. To begin with, Florida courts have already determined that the statutory "Journalist's Privilege" under § 90.5015 applies to internet-based entities, as long as they report news. *See Gubarev v. BuzzFeed, Inc.*, 365 F. Supp. 3d 1250 (S.D. Fla. 2019); *TheStreet.com v. Carroll*, 20 So. 3d 947 (Fla. 4th DCA 2009); *Carroll v. TheStreet.com, Inc.*, 2014 WL 5474048, at *6 (S.D. Fla. Apr. 10, 2014). The content published by Popcorned Planet clearly satisfies the statutory definition of "news," as it constitutes "information of public concern relating to local, statewide, national, or worldwide issues or events"—namely, in the categories of entertainment, culture and current events. Fla. Stat. § 90.5015(1)(b).

Additionally, Mr. Signore, who owns and operates Popcorned Planet, clearly qualifies as a "professional journalist" under the statutory criteria. To wit, (1) he is, and was at all material times, regularly engaged in collecting, reporting, and publishing news, for gain or livelihood, (2) he obtained the information sought while working as a paid employee of Popcorned Planet. Additionally, Mr. Signore—a person of considerable notoriety in the entertainment industry—has extensive experience in media as well as the industries about which he regularly prepares and publishes news reports for Popcorned Planet. Mr. Signore's extensive experience in media and entertainment includes past employment as Director of Digital Content with The Collective (now Collective Digital Studios), a Beverly Hills distribution company and

8

talent management firm; Disney's Internet Media Group as lead producer of the Original Content Development team for Disney.com; Break Media, where he created, wrote and directed numerous hit series; and VP of Original Programming at Defy Media.[4] Mr. Signore has also written, directed and produced several documentary films; has written, co-directed, and starred in feature length films; and has received numerous accolades for his original content, including awards from MTV and Variety. *Id.*

Furthermore, Popcorned Planet, as a corporate entity that produces and publishes news stories to the public through its website[5] and its dedicated YouTube channel,[6] qualifies as a "news agency," "news journal," or "news magazine" as those terms have been interpreted by Florida courts. The statute does not limit the scope of qualifying media outlets to only those engaged in traditional printed publication, or to so-called mainstream television or radio news organizations. The courts in *Gubarev v. BuzzFeed,* supra, 365 F. Supp. 3d 1250, and *TheStreet.com v. Carroll,* supra, 20 So. 3d 947, expressly rejected any such "traditional media" standard in finding that online media outlets very similar to Popcorned Planet regarding the manner in which they publish news to the public solely through web-based

---

[4] *See* Andy Signore - Biography - IMDb, at https://www.imdb.com/name/nm0797520/bio/?ref_=nm_ov_bio_sm (last accessed July 25, 2025).

[5] *See* Popcorned Planet website, at https://popcorned-shop.fourthwall.com/ (last accessed July 25, 2025)

[6] *See* Popcorned Planet - YouTube, at https://www.youtube.com/c/PopcornedPlanet/videos (last accessed July 25, 2025)

9

dissemination mechanisms, and reporters working for those outlets, fall within the scope of the statutory "journalist's privilege" under Fla. Stat. § 90.5015.

As an online content creator with news-gathering functions, Popcorned Planet qualifies for protection under the Journalist's Privilege. The materials sought in Plaintiff's subpoena fall squarely within this privilege, rendering the subpoena invalid on its face. Pursuant to Rule 45(d)(3)(A)(iii), because each of the seven enumerated non-party production requests set forth in the subpoena requests information that is subject to the so-called "reporter's privilege/shield" or "journalist's privilege," and because no exception exists under the circumstances, the subpoena impermissibly exceeds the scope of discoverable information under Rules 45 and 26, and must be quashed by this Court.

## II. The Subpoena Imposes an Undue Burden on Popcorned Planet

As noted above, Federal Rule of Civil Procedure 45(d)(3)(A)(iv) provides that a subpoena must be quashed if it imposes an undue burden. Popcorned Planet, a non-party, should not be subjected to extensive document production, especially when Plaintiff has not exhausted more direct avenues to obtain the requested information from the defendants themselves. Courts have recognized that non-party subpoenas under Rule 45 remain subject to the constraints on the scope of discovery as set forth under Rule 26. *See Maxwell v. Health Ctr. of Lake City, Inc.*, No. 3:05-cv-1056, 2006 WL 1627020, at *3 (M.D. Fla. 2006). To that end, Rule 26(b) provides that a court is *required*, "[o]n motion or on its own, [to] limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that," in relevant part:

10

> **(i)** the discovery sought is unreasonably cumulative or *duplicative*, or *can be obtained from some other source* that is more convenient, less burdensome, or less expensive;
>
> **(ii)** the party seeking discovery has had *ample opportunity* to obtain the information *by discovery in the action*; or

Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).

In applying this rule in the context of Rule 45 subpoenas to non-parties, courts within the Eleventh Circuit have held that where the information requested is available from another party to the action by way of traditional discovery requests, a party must obtain the information from the other party rather than imposing a burden on a non-party by issuing a Rule 45 subpoena. *See Richardson v. Bradley*, No. 3:17-cv-921, 2018 WL 11706748, at *1 (N.D. Fla. 2018) ("although Plaintiff may be entitled to the issuance of a subpoena commanding the production of documents from non-parties … the court will consider granting such a request *only if the documents sought from the non-party are not equally available to Plaintiff and are not obtainable from Defendant* through a request for production of documents under Rule 34") (emphasis added); *Maxwell*, 2006 WL 1627020, at *4 ("in an effort to spare third parties the expense and cost of responding to the subpoenas, the Court finds that Defendant ought to first attempt to obtain such evidence directly from Plaintiff pursuant to other available avenues under the Federal Rules of Civil Procedure. Importantly, Defendant has not stated that it has tried to obtain such information directly from Plaintiff through other means" and "caution[ing] Defendant to avoid discovery requests that amount to mere fishing expeditions"); *Largent v. Thermocarbon, Inc.*, No. 6:11-cv-335, 2011 WL 13323151, at *4 (M.D. Fla. 2011)

11

(same); *Cute v. ICC Cap. Mgmt., Inc.*, No. 6:09-cv-1761, 2010 WL 11626590, at *5 (M.D. Fla. 2010) (same); *Serrala US Corp. v. Paschke*, No. 3:21-cv-907, 2022 WL 19333286, at *2 (N.D. Fla. 2022) (collecting cases, and holding "[i]t appears that Plaintiff should be able to obtain the information it requested in the third-party subpoenas from Defendants themselves. Thus, the Court does not believe it is appropriate to allow Plaintiff to seek this information from Defendants' customers via third-party subpoenas at this time") (citing *Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 590 (N.D. Ill. 2020) ("A non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative."); *HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 309 (D.S.C. 2013) (quashing third-party subpoenas to Defendant's customers because "all of the information sought by Plaintiffs directly concerns Defendant and would be in Defendant's possession")).

As may be seen, each of the seven (7) production requests in the subject subpoena seeks information concerning communications between Popcorned Planet and the defendants to the originating action or agents acting on their behalf. Therefore, the information Respondent seeks from Popcorned Planet is available directly from the party defendants, rendering this subpoena cumulative, duplicative and otherwise beyond the scope of the limitations on discovery set forth under Rule 26(b)(2)(C).

The Respondent, as the party seeking discovery from a non-party via Rule 45 subpoena, bears the burden of demonstrating that she has exhausted less

burdensome means of obtaining the information. As Responded has failed to demonstrate such efforts, the subpoena should be quashed in its entirety.

### III. Conclusion

For the reasons set forth herein, and pursuant to the above cited authority, non-party Popcorned Planet respectfully requests this Court grant this motion, quash the subpoena, and award Popcorned Planet its reasonable attorney's fees incurred in preparing and filing this motion, as provided by Rule 45(d)(1).

Dated: July 25, 2025

Respectfully submitted,

/s/ *Jack Gordon, Esquire*
**Jeffrey "Jack" Gordon, Esquire**
Florida Bar No.: 836760
**David P. Mitchell, Esquire**
Florida Bar No.: 67249
**MANEY | GORDON TRIAL LAWYERS**
101 East Kennedy Boulevard, Suite 1700
Tampa, Florida 33602
T: (813) 221-1366   F: (813) 223-5920
j.gordon@maneygordon.com
d.mitchell@maneygordon.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail on this 25th day of July, 2025, to the following:

Esra A. Hudson
ehudson@manatt.com
Stephanie Roeser
sroeser@manatt.com
Sarah Moses
smoses@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Counsel for Respondent, Blake Lively

                                                */s/ David P. Mitchell*
                                                **David P. Mithell, Esquire**