**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

POPCORNED PLANET, INC.,

               Movant,

v.                                                    Case No. 8:25-mc-00028-WFJ-LSG

BLAKE LIVELY,

               Respondent.

**MEMORANDUM OF LAW IN OPPOSITION TO
NON-PARTY POPCORNED PLANET'S MOTION TO QUASH SUBPOENA
AND CROSS MOTION TO COMPEL PRODUCTION**

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ..................................................................................................1

BACKGROUND...................................................................................................4

    A.  Ms. Lively Filed The Underlying Litigation Asserting Claims of Sexual Harassment, Retaliation, and Defamation, Among Others.........................4

    B.  Mr. Signore Has Created Nearly 200 Pieces of Anti-Lively Content.........6

    C.  Ms. Lively Served The Subpoena After TAG Identified Popcorned Planet As Having Generated Content On Its Behalf...............................................10

LEGAL STANDARD..........................................................................................12

ARGUMENT ......................................................................................................13

  I.    THE COURT SHOULD DENY THE MOTION. ..............................................13

    A.  The Subpoena Does Not Seek Privileged Materials. ..................................13

        1.  The Journalist Privileges do not apply...................................................13

        2.  If the Journalist Privileges apply, they are overcome. .........................16

    B.  There Is No Undue Burden. .........................................................................18

  II.   THE COURT SHOULD COMPEL POPCORNED PLANET........................20

CONCLUSION....................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Allstate Ins. Co. v. Ambulatory Surgery Ctr. of Boca Raton, LLC,*
2025 WL 1725866 (M.D. Fla. June 20, 2025) ........................................................... 13

*Byte Fed., Inc. v. Lux Vending LLC,*
2023 WL 7043266 (M.D. Fla. Oct. 26, 2023) ........................................................... 15

*Cable News Network, Inc. v. Black,*
308 So. 3d 997 (Fla. 4th DCA 2020) ........................................................................ 16

*Carroll v. TheStreet.com, Inc.,*
2014 WL 5474048 (S.D. Fla. Apr. 10, 2014) ................................................ 13, 17, 19

*CBS, Inc. v. Cobb,*
536 So. 2d 1067 (Fla. 2d DCA 1988) ....................................................................... 19

*Christ Covenant Church v. Town of Sw. Ranches,*
2008 WL 2686860 (S.D. Fla. June 29, 2008) ..................................................... 17, 18

*Fed. Trade Comm'n v. Boost Software, Inc.,*
2015 WL 11348282 (S.D. Fla. Sept. 30, 2015) ........................................................ 20

*Gregory v. Miami-Dade Cnty.,*
2015 WL 3442008 (S.D. Fla. May 28, 2015) ........................................................... 19

*In re 3M Combat Arms Earplug Prods. Liab. Litig.,*
2020 WL 5578428 (N.D. Fla. Feb. 18, 2020) .......................................................... 20

*In re Fitch, Inc.,*
330 F.3d 104 (2d Cir. 2003) ..................................................................................... 14

*In re Nat. Gas Commodity Litig.,*
235 F.R.D. 199 (S.D.N.Y. 2005) .............................................................................. 18

*In re Novo Nordisk Securities Litig.,*
2021 WL 1232640 (D.N.J. Mar. 30, 2021) .............................................................. 20

*In re W. States Wholesale Nat. Gas Antitrust Litig.,*
2009 WL 10692733 (D. Nev. Aug. 14, 2009) ..................................................... 17, 18

*Int'l Ass'n of Machinists & Aerospace Workers v. P & B Transp.,*
2007 WL 4145974 (M.D. Fla. Nov. 19, 2007) ......................................................... 15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Landfall 2, Inc. v. Datascore-AI,*
LLC, 2024 WL 1203273 (S.D. Fla. Mar. 21, 2024)................................................... 19

*Lively v. Wayfarer Studios,*
No. 24-cv-10049 (Dec. 31 2024, S.D.N.Y.).......................................................passim

*Monarch Air Grp., LLC v. Journalism Dev. Network, Inc.,*
2025 WL 445491 (S.D. Fla. Feb. 10, 2025) ................................................... 13

*News-J. Corp. v. Carson,*
741 So. 2d 572 (Fla. 5th DCA 1999) ...............................................................18, 19

*Novagold Res., Inc. v. JCap Rsch. USA LLC,*
2024 WL 4250265 (E.D.N.Y. Mar. 29, 2024).......................................................... 14

*Sims v. Figueroa,*
2019 WL 3219670 (M.D. Fla. July 17, 2019) ........................................................... 2

*State v. Davis,*
20 So. 2d 220 (Fla. 1998)........................................................................... 13

*State v. Davis,*
720 So. 2d 220 (Fla. 1998)........................................................................ 16

*Techtronic Indus. Co. Ltd. v. Victor Bonilla,*
2024 WL 361247 (M.D. Fla. Jan. 31, 2024) ...................................................... 14, 16

*TIC Park Ctr. 9, LLC v. Cabot,*
2017 WL 9988745 (S.D. Fla. June 9, 2017)......................................................... 13

*Too Much Media, LLC v. Hale,*
206 N.J. 209 (2011) .............................................................................. 15

*TQP Dev. LLC v. Alaska Air Grp., Inc.,*
2012 WL 13128182 (N.D. Ga. Nov. 28, 2012) ..................................................... 20

*Tropical Mktg. & Consulting, LLC. v. Glock, Inc.,*
2012 WL 5431002 (M.D. Fla. Nov. 7, 2012) ........................................................ 20

*U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Companies, Inc.,*
507 F. Supp. 2d 45 (D.D.C. 2007) ................................................................17, 18

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

### STATUTES

Fla. Stat. § 90.5015 ................................................................................ 13

Fla. Stat. § 90.5015(1)(B) ................................................................... 14, 15

Fla. Stat. § 90.5015(2)(B) ..................................................................... 16

Fla. Stat. § 90.5015(2)(B) ..................................................................... 16

Fla. Stat. § 90.5015(2)(C) ..................................................................... 16

### RULES

Fed. R. Civ. P. 26(b)(1) .......................................................................... 13

Fed. R. Civ. P. 37(a)(5) .......................................................................... 20

Fed. R. Civ. P. 45 ....................................................................... 12, 13, 20

Fed. R. Civ. P. 45(a)(1)(A) ..................................................................... 13

Fed. R. Civ. P. 45(d)(1) .......................................................................... 20

Respondent Blake Lively respectfully requests the Court deny Popcorned Planet Inc.'s ("Popcorned Planet") Motion to Quash and grant her cross motion to compel. ECF No. 2 ("Motion" or Mot."); Ex. A ("Subpoena").[1]

## INTRODUCTION

Andy Signore, who owns and operates Popcorned Planet, has publicly declared that "I am not a paid journalist."[2]  He describes himself, instead, as a "content maker" and "online content strategist" who is an "expert" at helping his clients "get clicks" and "build a more engaged fact base through recurring content." Since mid-August 2024, Popcorned Planet has driven "clicks" and engagement on its own website, YouTube channel, accounts on X, and other social media by lambasting actress and entrepreneur Blake Lively for reporting sexual harassment on the set of the film *It Ends With Us* ("Film"). Since Popcorned Planet began to create anti-Lively content in mid-August 2024, it has generated *hundreds* of such pieces, calling Ms. Lively a "mean girl" who "lies," is "heartless," "delusional," "shallow[]," and "entitle[ed]" and who "will lose" her the litigation she initiated because she is not the victim but rather the aggressor

---

[1] All exhibit references are to the exhibits attached to the Declaration of Sigrid S. McCawley, filed contemporaneously with this Motion.

[2] The Motion treats Popcorned Planet and Mr. Signore interchangeably and seeks relief by advancing arguments as to Mr. Signore's purported status as a journalist. Accordingly, this opposition and cross motion refers to both Popcorned Planet and Mr. Signore with the term "Popcorned Planet" unless otherwise specified.

(notwithstanding the retaliatory, and now dismissed, $400 million counter-suit filed against her by certain defendants).

Ms. Lively initiated the underlying litigation in December 2024 in connection with sexual harassment she and others experience on the set of the Film and a subsequent smear campaign launched against her in retaliation for speaking out. *Lively v. Wayfarer Studios*, No. 24-cv-10049, (Dec. 31 2024, S.D.N.Y.) ("Underlying Litigation")[3] (defendants in the Underlying Litigation, "Wayfarer Defendants").[4] The Underlying Litigation alleges that the Wayfarer Defendants began to perpetuate the retaliatory campaign in mid-August 2024 by, for example, encouraging third-party online content creators (like Popcorned Planet) to spread disparaging (and false) narratives about Ms. Lively, including that she is a liar and a bully who invented her claims in order to achieve power and control over the Film. Defendant TAG (a public relations firm that specializes in crisis communications) has admitted in sworn interrogatory responses that Mr. Signore

---

[3] Ms. Lively filed an Second Amended Complaint in July 2025, which is attached as Exhibit B for ease of reference. All citations to other filings in the Underlying Litigation docket refer to *Lively v. Wayfarer Studios LLC*, 1:24-cv-10049, (S.D.N.Y.). The Court can take judicial notice of all court filings. *See Sims v. Figueroa*, 2019 WL 3219670, at *2 (M.D. Fla. July 17, 2019).

[4] The Wayfarer Defendants are: Wayfarer Studios LLC ("Wayfarer"), Justin Baldoni ("Baldoni"), Jamey Heath ("Heath"), Steve Sarowitz ("Sarowitz"), It Ends With Us Movie LLC, Melissa Nathan, The Agency Group LLC ("TAG"), Jennifer Abel, Jed Wallace ("Wallace"), and Street Relations Inc.

is one of the content creators—*but notably not one of the reporters*[5]—who seeded, generated, created, or influenced social media content or provided "related digital or social media services directly or indirectly **at the request of, or on behalf of, any Wayfarer Party or their agents or affiliates**."

Neither Popcorned Planet nor the Wayfarer Defendants nor their counsel deny that they have communicated with each other about Ms. Lively throughout the last year. Ms. Lively has been attempting to obtain those communications *for many months*. And, yet, Ms. Lively has yet to receive a single one. The Wayfarer Defendants have refused to produce any communications sent by their agents or on their behalf. And, now, Popcorned Planet also is refusing to produce any such communications he received. Accordingly—and with document discovery slated to close on August 15—Ms. Lively finds herself in a circular shell game designed to keep the retaliation scheme "untraceable."

Ms. Lively respectfully asks the Court to deny Popcorned Planet's Motion and grant her cross-motion to compel. Both of Popcorned Planet's arguments are wrong as a matter of fact and law. The Subpoena does not seek privileged material, including because Mr. Signore openly admits that he is not a paid journalist. *Supra*

---

[5] The interrogatories asked for communications with (1) content creators and (2) reporters. TAG listed Mr. Signore among the content creators, but not the reporters. Underlying Litigation, ECF No. 451-1 at 13-14.

Argument § I(A). Nor does the Subpoena cause any undue burden because the sought after materials are not otherwise available. *Supra* Argument § II(B). The Court should compel Popcorned Planet to produce all materials responsive to the Subpoena within seven days of this Order.

## BACKGROUND

**A.    Ms. Lively Filed The Underlying Litigation Asserting Claims of Sexual Harassment, Retaliation, and Defamation, Among Others.**

Ms. Lively starred in the Film, Baldoni directed it, and Wayfarer—the movie studio owned by Baldoni and his billionaire business partner, Sarowitz, and whose CEO is Heath—produced and owns it. Ex. B ¶¶ 2, 57-60. During filming, Ms. Lively reported on-set sexual harassment and misconduct, including that Baldoni: divulged information about his sex life; made derogatory, degrading, and sexual comments; described his own genitalia; improvised unwanted intimacy that had not been rehearsed, choreographed, or discussed with Ms. Lively in advance; added graphic content to the script, including multiple new scenes with nudity, and on-camera orgasm; and added unscripted nudity to a birthing scene for which he cast his friend as Ms. Lively's OBGYN. *Id.* ¶¶ 7, 75-139. A resulting contractual rider laid out 17 specific protections to ensure a safe set, including a mandate that Baldoni, Heath, Wayfarer, and others not retaliate against Ms. Lively "for raising concerns or requesting safeguards." *Id.* ¶¶ 146-150, 158.

As promotional events for the Film began in the summer of 2024, Baldoni became concerned that Ms. Lively would speak publicly about the on-set harassment and solicited the assistance of crisis management experts, TAG, Nathan, and Abel, and Sarowitz, who promised to spend "$100 million" to ruin Ms. Lively's and her family's lives. *Id.* ¶¶ 26, 169, 193-199, 297. TAG devised a "Scenario Planning" document dated August 2, 2024 suggesting they could "get ahead" of Ms. Lively by "planting stories" about her, including that she had a "less than favorable reputation" and accusing her of "bullying" her way into positions of power and taking control of the Film. *Id.* ¶¶ 31, 203-207. In one text message, Ms. Nathan explained "*we can bury anyone*" but cautioned they should not tell Baldoni in writing that they "*will destroy*" Ms. Lively because "*[i]magine if a document saying all the things that he wants ends up in the wrong hands.*" *Id.* ¶¶ 5, 33-34, 48, 209 (emphasis added). The next day, Ms. Nathan provided pricing quotes *ranging from $75,000 to $175,000 per month* for "the *creation of social fan engagement* to go back and forth with any negative accounts, helping to *change narrative*" for the former and for a "full reddit, full social account take downs, full social crisis team on hand for anything – engage with audiences in the right way, *start threads of theories* (discuss) this is the way to be fully 100% protected" for the latter. *Id.* ¶¶ 29, 213-214. Ms. Nathan emphasized: "*All of this will be most importantly untraceable.*" *Id.* (emphasis added).

On August 7, Abel and Nathan agreed that "*we really need to put the social combat plan*" into "motion" and, around that time, a Texas-based contractor named Jed Wallace and his "crisis management" company were hired to do just that. *Id.* ¶¶ 215, 224-293. They would feed pieces of manufactured narratives to online content creators and influencers, who would help content go viral to influence public opinion and cause an organic pile-on. *Id.* Before the end of the month, the Wayfarer Defendants reported that Ms. Lively was seeing an "overwhelming tide of negative publicity" and "social media had turned against" her and her husband, Ryan Reynolds. *Id.* ¶¶ 258, 324-339.

The relentless media influence and "digital manipulation" strategy to convince the public that Ms. Lively, rather than Baldoni, is the aggressor and bully has continued to date. *Id.* ¶¶ 8,48, 343, 453, 451. Much of this phase has taken place in the form of statements by the Wayfarer Defendants' lawyer, Bryan Freedman, who regularly issues inflammatory content to media outlets and content creators, and some of his statements form the basis of a defamation claim of defamation in the Underling Litigation. *Id.* ¶¶ 73, 83, 221, 298-299.

**B.    Mr. Signore Has Created Nearly 200 Pieces of Anti-Lively Content.**

In the IMDB biography he wrote (Mot. at 9 n.7), Mr. Signore does not call himself a journalist, instead describing himself as a "creator, writer, and director of numerous widely popular digital series" and a "content maker and online

strategist." Ex. C. Same with his LinkedIn Profile, in which he labels himself a "Creative Director • Digital & Social Media Marketing • Online Content Strategist" and summarizes his profession as follows:

> "Expert at connecting brands with viral concepts and social media posts/integrations in surprising and successful ways. Whether you're looking to get clicks through branded integration, SEO and social media influencers, or wanting to build a more engaged fan base through recurring content, I'm the online strategist for you. Through my 12+ years as an SVP at multiple LA digital media companies, I know how to work with clients while managing teams of talent, directors and developers. I look forward to finding a company to grow with and build our next billion views!"

Ex. D. Mr. Signore purportedly pays himself as an employee of Popcorned Planet (Mot. at 9), and publishes content on various platforms, including on the Popcorned Planet website ("Website"), the @PopcornedPlanet YouTube channel ("YouTube Channel"), and on both his personal X timeline (@AndySignore) and Popcorned Planet's X timeline (@PopcornedPlanet). *See* Exs. Ex-H (collectively, "Platforms"). He does not identify himself as a journalist on any of these Platforms (*id.*) and, in fact, disavowed being a "paid journalist" in the following post:[6]

---

[6] Andy Signore (@andysignore), X (Aug. 14, 2020, at 3:02 p.m.), https://x.com/andysignore/status/1294348587527282688.



Popcorn Planet first began to display anti-Lively content on its Platforms around August 14, 2024—*i.e.*, right around the time the retaliation began—including in headlines calling her a "bully" and "mean girl."[7] To date, the YouTube Channel boasts nearly 200 anti-Lively headlines,[8] including that Ms. Lively "LIES," "THREATENED" to "Cry HARASSMENT," is "HEARTLESS" and "DELUSIONAL," and other sensational accusations such as the following:[9]

---

[7] *Blake Lively FAT-SHAMED?! Director Justin Baldoni SABOTAGED by Ryan Reynolds?! It Ends With Us DRAMA*, (YouTube Aug. 14, 2024) https://www.youtube.com/watch?v=JwncIOi7UiE (first anti-Lively video posted on his YouTube Channel); Andy Signore (@andysignore), X (Aug. 15, 2024, at 4:45 ET) https://x.com/andysignore/status/1824185656525885583/photo/1 ("Blake Lively exposed as a mean girl").

[8] YOUTUBE, +"Popcorned Planet" + "Blake Lively," (Aug. 8, 2025).

[9] *Blake Lively's Lies EXPOSED!? Taylor Swift UPSET?! Justin Baldoni BATTLES BACK!*, (YouTube Jan. 21, 2025) https://www.youtube.com/watch?v=qin4VQsn96M; *SHOCKER! Blake Lively THREATENED Sony "Use My Cut or I'll Cry HARASSMENT!" Crew-Member Reveals?!*, (YouTube Jan. 30, 2025) https://www.youtube.com/watch?v=OXo4cOqERo8; *HEARTLESS! Blake Lively & Ryan Reynolds Grasp At AWFUL Straws Against Justin Baldoni!?*, (YouTube Jan. 23, 2025) https://www.youtube.com/watch?v=4XnnhgHBgTk; *UNBELIEVABLE! Blake Lively & Ryan Reynolds Give DELUSIONAL Speech At Time 100 Gala*, (YouTube, Apr. 25, 2025).



Popcorned Planet offers monthly membership fees ranging from $5.99 to $37.50 and currently promises **"FIRST ACCESS TO IT ENDS WITH JUSTICE"** (Ex. E)—a "documentary" about "Justin Baldoni vs. Blake Lively" that remarks on Ms. Lively's "*shallowness* and *entitlement*," her "*lying*," and asks why "has Blake Lively turned into such a *mean girl*?" (*EXCLUSIVE! "It Ends With Us" Crew SPEAK OUT Against Blake Lively!? "It Ends With Justice" Trailer*, (YouTube Jun. 17, 2025, at 1:57, 1:34, 0:47) https://www.youtube.com/watch?v=v2OGwByAIQU). Popcorned Planet offers merchandise for sale, including a $130 shirt and sticker set promoting "It Ends With Justice." Ex. E. In various posts in 2025, Popcorned Planet confirmed that it receives related materials directly from "**Baldoni's legal counsel**."[10] He also published a written statement from Mr. Freedman that

---

[10] *See Blake Lively CAUGHT Lying About Justin Baldoni - Full Video Evidence From It Ends With Us REVEALED!*, (YouTube Jan. 21, 2025, at 0:01, 0:17, 1:50) https://www.youtube.com/watch?v=PIX7Clu_ZSU (stating "*Justin Baldoni's legal counsel just sent us raw footage* from It Ends With Us" in a "massive scoop" and airing both the "raw footage" and a script of the matching scene); Andy Signore (@andysignore), X (Jan. 21, 2025 at 1:20 p.m.) https://x.com/andysignore/status/1881768808861598176 (emphasis added) (**"EXCLUSIVE! We just got ahold of 10 MINUTES of 'It Ends With Us' On-Set Footage** *from Justin Baldoni's legal counsel"*).

appears to have been provided via Google documents or some form of document

sharing:



*EXCLUSIVE! Justin Baldoni DROPS His Case Against Blake Lively!? - Lawyers React*,

(YouTube Jun. 24, 2025) https://www.youtube.com/watch?v=bpp2KK0-I7M.

Mr. Signore was the first content creator to post this statement and did so hours

before it was publicly reported elsewhere, further indicating that he received it

directly from Mr. Baldoni's legal team.[11]

### C.    Ms. Lively Served The Subpoena After TAG Identified Popcorned Planet As Having Generated Content On Its Behalf.

Trial in the Underlying Litigation is slated for March 2026 and the deadline

for all parties to complete their document productions and file motions to compel

has passed. Underlying Litigation, ECF No. 425. Non-party document production

---

[11] Mr. Signore posted his video, including Freedman's statement in an untitled Google document at 11:46 a.m. ET. *Id.* This exact statement was not published by news sources until approximately 5:00p.m. ET. *See, e.g.,* Tommy McArdle and Jack Smith, *Justin Baldoni Not Moving Forward with Amended Claims Against Blake Lively After Judge Dismisses His $400M Lawsui*t, People (Jun. 24. 2025, at 5:00 ET).

closes August 15, 2025, with related motions to compel due August 22, 2025. *Id.* The deadline for all depositions and fact discovery is September 30, 2025. *Id.* Since the beginning of discovery, Ms. Lively has sought information relating to these content creators (like Popcorned Planet), including serving interrogatories asking for the identification of "***all Content Creators***" (Interrogatory No. 5) and "***all reporters and news or media outlets of any kind*** with whom ***You*** have communicated in any manner, concerning Ms. Lively, Mr. Reynolds," or other related topics "from May 1, 2024 to present" (Interrogatory No. 6). *See, e.g.,* Underlying Litigation, ECF No. 555 at 16-17 & ECF No. 556-27. TAG refused to the answer the interrogatories until compelled to do so and, on June 25, 2025, identified "***ANDY SIGNORE ('Popcorned Planet')***" as an "'***individual or entity who seeds, generates, creates, or influences Social Media content or provides related digital or social media services directly or indirectly at the request of, or on behalf of, any Wayfarer Party or their agents or affiliates***.'" *See Id.*, ECF No. 355 at 4 & ECF No. 451-1 at 13 (emphasis added).[12] Neither Mr. Signore nor Popcorned Planet were among more than a dozen "reporters and news or media outlets of any kind" identified in TAG's response to Interrogatory No. 6. *See id.*, ECF 451-1 at 13-14.

---

[12] The Court in the Underlying Litigation granted Ms. Lively's motion to compel subject to this definition of content creators.  Underlying Litigation, ECF No. 355.

Ms. Lively has served multiple requests for production seeking communications with content creators, including with Ms. Signore. *See* Underlying Litigation, ECF No. 556-2 at 21 47, 78, 102, 126, 152, 176, 203. To date, none of the Defendants have produced a single communication with Mr. Signore, including any sent by their agents or on their behalf, and Ms. Lively has filed a motion to compel such communications. *See* Underlying Litigation, ECF No. 552.

Ms. Lively served the Subpoena on Popcorned Planet with a response date of July 23, 2025, seeking seven requests for production. *See* Ex A. Popcorned Planet has not served responses and objections, instead filing the Motion and serving it on counsel for Ms. Lively on July 29, 2025.  ECF No. 2.

## LEGAL STANDARD

Rule 45 authorizes a civil litigant to subpoena a non-party for information "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Rules 26(b)(1) & 45(a)(1)(A)(iii *Allstate Ins. Co. v. Ambulatory Surgery Ctr. of Boca Raton, LLC,* 2025 WL 1725866, at *2 (M.D. Fla. June 20, 2025). A non-party seeking to quash a Rule 45 subpoena bears a "heavy burden" to demonstrate "undue burden" or that the subpoena requires the disclosure of privileged or protected information. *TIC Park Ctr. 9, LLC v. Cabot*, 2017 WL 9988745, at *5 (S.D. Fla. June 9, 2017).

## ARGUMENT

## I.    THE COURT SHOULD DENY THE MOTION.

### A.    The Subpoena Does Not Seek Privileged Materials.

#### 1.    The Journalist Privileges do not apply.

Florida law provides a "professional journalist" with a "qualified privilege not to be a witness concerning, and not to disclose the information, including the identity of any source, that the professional journalist has obtained while actively gathering news." FLA. STAT. § 90.5015 ("Florida Journalist's Privilege").[13] To avail itself of the Florida Journalist's Privilege, Popcorned Planet must demonstrate that Mr. Signore is a "professional journalist" but it cannot do so because he (1) is not "regularly engaged" in publishing news "for gain or livelihood" and; (2) did not obtain the subpoenaed information "while working as a salaried employee of, or independent contractor for, a newspaper, news journal, news agency, press association, wire service, radio or television station, network, or news magazine." FLA. STAT. § 90.5015(1)(b).

The Court can resolve the first prong by looking at Mr. Signore's own words confirming that he "*not a paid journalist. That is not my job.*" *Supra* at

---

[13] State and federal common law journalist's privileges "mirror[] the balancing test set forth in" the Florida Journalist's Privilege. *Carroll v. TheStreet.com, Inc.*, 2014 WL 5474048, at *8 n.4 (S.D. Fla. Apr. 10, 2014); *accord State v. Davis*, 20 So. 2d 220, 222 (Fla. 1998); *Monarch Air Grp., LLC v. Journalism Dev. Network, Inc.*, 2025 WL 445491, at *1 (S.D. Fla. Feb. 10, 2025) (together, the Florida Journalist's Privilege and the common-law privileges ("Journalist Privileges")).

Background § B. Consistent with that admission, Mr. Signore does not identify himself as a journalist on any of the Platforms, and TAG (a crisis public relations specialist) did not view him as a journalist either when they successfully procured his services on behalf of the Wayfarer Defendants.[14] Earning a livelihood by creating content based on its beneficial value to Popcorned Planet's client or allies, rather than its newsworthiness, "weighs against" treating Mr. Signore as a "paid journalist." *In re Fitch, Inc.*, 330 F.3d 104, 109 (2d Cir. 2003); *see Techtronic Indus. Co. Ltd. v. Victor Bonilla*, 2024 WL 361247, at *2 n.1 (M.D. Fla. Jan. 31, 2024) (journalist privilege is "called into question" because the purported journalist only "publishes reports about companies in which [he] has taken a financial position prior to publication"); *Novagold Res., Inc. v. JCap Rsch. USA LLC*, 2024 WL 4250265, at *6 (E.D.N.Y. Mar. 29, 2024) ("Evidence of financial independence is undoubtedly an important aspect of ensuring a free press."); *accord* Underlying Litigation, ECF No. 118 ("reporter's privilege is intended to protect the public's interest in being informed by 'a vigorous, aggressive and independent press'").[15] Popcorned Planet cannot sustain its burden to demonstrate that Mr. Signore is a professional

---

[14] *Supra* at Background § C (explaining that TAG listed Mr. Signore among the content creators, but not reporters, with which they communicated).

[15] Mr. Signore's own words, again, provide support for finding he is not a professional journalist: he publicly criticized a third party for making "broad assumptions that fit her own narrative while having a clear connection to [a] PR firm which she never discloses, but still calls herself a 'journalist.'" Andy Signore (@andysignore), X (Sep. 27, 2023, at 10:08 ET) https://x.com/andysignore/status/1707034563065905502.

journalist as a matter of law solely by stating that he "regularly engaged in collecting, reporting, and publishing news, for gain or livelihood." Mot. at 8.; *Byte Fed., Inc. v. Lux Vending LLC*, 2023 WL 7043266, at *3 (M.D. Fla. Oct. 26, 2023); *Int'l Ass'n of Machinists & Aerospace Workers v. P & B Transp.*, 2007 WL 4145974, at *2 (M.D. Fla. Nov. 19, 2007).[16]

Nor has Mr. Signore demonstrated, as he must, that he obtained the information sought "while working as a salaried employee of, or independent contractor for a newspaper, news journal, news agency, press association, wire service, radio or television station, network, or news magazine." FLA. STAT. § 90.5015(1)(b). The Motion devotes multiple pages arguing that the Journalist Privileges apply to online media outlets (Mot. at 11-13) while ignoring that Popcorned Planet "flatly" fails to meet the second prong because Mr. Signore is "not an employee of any news organization but rather is 'self-employed or contracts with himself'" and such "'self-employment' is clearly not contemplated in the statutory definition of a professional journalist." *See Techtronic Indus. Co. Ltd. v. Bonilla*, 2024 WL 361247, at *1 (M.D. Fla. Jan. 31, 2024) ("Florida Courts have historically held that the journalist privilege applies to journalists employed or

---

[16] *See Too Much Media, LLC v. Hale*, 206 N.J. 209, 216, 218-19, 222-223, 233-237, 242 (2011) (reporter's privilege did not extend "to a self-described journalist" who "exhibited *none* of the recognized qualities or characteristics traditionally associated with the news process, nor ha[d] she demonstrated an established connection or affiliation with any news entity").

hired by traditional media outlets." (citing cases)). Having conceded that he is not a paid journalist and is not employed by one of the covered entities, Mr. Signore cannot now claim otherwise.

>        2.    If the Journalist Privileges apply, they are overcome.

The journalistic privileges are overcome where, as here, "(a) The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought; (b) The information cannot be obtained from alternative sources; and (c) A compelling interest exists for requiring disclosure of the information." FLA. STAT. § 90.5015(2)(a)-(c) ("Three-Part Test"); *State v. Davis*, 720 So. 2d 220, 227 (Fla. 1998); *see Cable News Network, Inc. v. Black*, 308 So. 3d 997, 1000-1001 (Fla. 4th DCA 2020).

*First*, Mr. Signore does not, because he cannot, dispute that the information Ms. Lively seeks goes to the "heart" of her claims in the Underlying Litigation. Mot. at 14; *Carroll*, 2014 WL 5474048, at *8.[17] Among others, how the Wayfarer Defendants (or individuals acting on their behalf) perpetuated the smear campaign, including by enlisting content creators like Popcorned Planet to generate anti-Lively content, and what they communicated, are central to the

---

[17] *See also Christ Covenant Church v. Town of Sw. Ranches*, 2008 WL 2686860, at *8 (S.D. Fla. June 29, 2008) (finding first prong met where discovery would enable party to investigate its claims); *accord In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2009 WL 10692733, at *15 (D. Nev. Aug. 14, 2009); *U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Companies, Inc.*, 507 F. Supp. 2d 45, 52 (D.D.C. 2007).

retaliation and defamation claims in the Underlying Litigation. Neither Popcorned Planet nor any of the Wayfarer Defendants (or their counsel) have challenged the relevance and materiality of their communications with Content Providers.

*Second*, Popcorned Planet is wrong that the requested information is otherwise "available." Ms. Lively has been attempting to obtain communications between the Wayfarer Defendants and content creators for nearly six months and, to date, has not received any communications with Popcorned Planet, despite the fact that these communications clearly exist—this is, as described earlier, the result of an elaborate shell game. *Supra* at Background § C. Under these circumstances, there is "no utility" in requiring Ms. Lively to continue incurring expenses attempting to identify what party or third-party has possession, custody, or control of the communications and compel their production in multiple courts, when there is no question that Popcorned Planet possesses them. *See Christ Covenant Church v. Town of Sw. Ranches*, 2008 WL 2686860, at *9 (S.D. Fla. June 29, 2008) (finding second prong met where the court could not "conceive of any other means of obtaining information to enable the" party to investigate the other party's factual assertions other than via third parties).[18]

---

[18] *Accord W. States*, 2009 WL 10692733, at *16 (litigant not required "to engage in onerous, wide-ranging discovery, or discovery from every conceivable source"); *In re Nat. Gas Commodity Litig.*, 235 F.R.D. 199, 216 (S.D.N.Y. 2005) (privilege "does not require that every theoretical source be exhausted"); *U.S. Commodity*, 507 F. Supp. 2d at 55 ("In exhaustion, the rule of reason governs.").

*Third*, the final prong of the Three-Part Test favors disclosure because Ms. Lively is entitled to redress injuries caused by the retaliatory and defamatory conduct. *News-J. Corp. v. Carson*, 741 So. 2d 572, 576 (Fla. 5th DCA 1999). Popcorned Planet argues that there is no compelling need because Ms. Lively "has apparently declined to seek the requested information" from the Wayfarer Defendants and has not "focused her time, attention and court resources on obtaining it from the party defendants, rather than waiting until the tail end of the discovery period to burden a non-party news entity with what can fairly be described as a textbook fishing expedition." Mot. at 15-17. But Popcorned Planet is demonstrably wrong, for the reasons discussed above, and because this "is not merely a 'fishing expedition' for evidence which theoretically could be useful," but rather a "necessary step" in Ms. Lively's due and proper preparation for trial." *CBS, Inc. v. Cobb*, 536 So. 2d 1067, 1071 (Fla. 2d DCA 1988); *Gregory v. Miami-Dade Cnty.*, 2015 WL 3442008, at *9 (S.D. Fla. May 28, 2015). It would deprive Ms. Lively of necessary information and permit the perpetuators of an "untraceable" campaign of retaliation to keep their scheme hidden by allowing (even unwitting) content creators to hide behind the Journalist Privileges. *Carroll*, 2014 WL 5474048, at *8; *see also Carson*, 741 So. 2d at 576.

## B.    There Is No Undue Burden.

Popcorned Planet has failed to meet its "heavy burden" of demonstrating

18

that the Subpoena causes undue burden by resting solely on the speculative assertion that Ms. Lively "has not exhausted more direct avenues to obtain the requested information from the defendants themselves." Mot. 17-20.[19] For the reasons stated above, Ms. Lively has been seeking (but has yet to receive) communications with Popcorned Planet directly from the Wayfarer Defendants. The mere possibility that the same documents "could be obtained" from a party is not, standing alone, a sufficient basis to quash a third-party subpoena, especially where they may demonstrate holes or omissions in the parties' productions. *See Landfall 2, Inc. v. Datascore-AI*, LLC, 2024 WL 1203273, at *2, *5 (S.D. Fla. Mar. 21, 2024) (rejecting argument that a party should "be required to exhaust all sources of information" before seeking third-party discovery); *Fed. Trade Comm'n v. Boost Software, Inc.,* 2015 WL 11348282, at *3 (S.D. Fla. Sept. 30, 2015) ("plaintiffs should be able to cast a wide 'net' in their effort to prove their claims," especially where documents have not been found in defendants' productions); *Tropical Mktg. & Consulting, LLC. v. Glock, Inc.*, 2012 WL 5431002, at *3 (M.D. Fla. Nov. 7, 2012) (third party's possession of documents may be independently significant even if also in the possession of a party).[20]

---

[19] Popcorned Planet has not challenged the subpoena requests on overbreadth, relevance, oppression, or expense grounds, thereby conceding these issues. *See* Mot. at 17-20.

[20] *Accord In re Novo Nordisk Securities Litig.,* 2021 WL 1232640, at *7 (D.N.J. Mar. 30, 2021) (plaintiffs may seek nonparty discovery of documents "likely to be in [a party's] possession" because they

## II.    THE COURT SHOULD COMPEL POPCORNED PLANET

Ms. Lively respectfully requests that the Court compel Popcorned Planet to respond to the subpoena in full within seven days of entry of an order. Popcorned Planet's arguments fail as a matter of fact and law. Popcorned must therefore comply with the Subpoena, including producing a privilege log of any withheld materials in accordance with federal law.[21]

### <u>CONCLUSION</u>

For the reasons herein, the Court should deny the Motion and grant Ms. Lively's Cross-Motion to Compel.

Respectfully submitted,

Dated: August 12, 2025

*/s/ Sigrid S. McCawley*
BOIES SCHILLER FLEXNER LLP
Sigrid S. McCawley
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
(954) 356-0011
smccawley@bsfllp.com

---

"may yield different versions of documents, additional material, or perhaps, significant omissions"); *TQP Dev. LLC v. Alaska Air Grp., Inc.*, 2012 WL 13128182, at *5 (N.D. Ga. Nov. 28, 2012) ("discovery rules permit a party to request overlapping discovery from different sources").

[21] Popcorned Planet's demand for attorney's fees under Rule 45(d)(1) fails because Rule 45 only allows fees as a sanction where a party has failed to take reasonable steps to avoid undue burden and the Motion provides no basis to make such a finding here.  *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 5578428, at *9 (N.D. Fla. Feb. 18, 2020) (denying sanctions where no showing moving party acted unreasonably, in bad faith or for an improper purpose). On the other hand, Rule 37 mandates fee shifting when a motion to compel is granted, which would be applicable here the event the Court grants Ms. Lively's cross-motion to compel. *See* Fed. R. Civ. P. 37(a)(5).

WILLKIE FARR & GALLAGHER LLP
Michael J. Gottlieb
Kristin E. Bender
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com

Aaron E. Nathan
787 Seventh Avenue
New York, NY 10019
(212) 728-8904
anathan@willkie.com

DUNN ISAACSON RHEE LLP
Meryl C. Governski
(*pro hac vice forthcoming*)
401 Ninth Street, NW
Washington, DC 20004
(202) 240-2900
mgovernski@dirllp.com

MANATT, PHELPS & PHILLIPS LLP
Esra A. Hudson
Stephanie A. Roeser
Sarah E. Moses
2049 Century Park East, Suite 1700
Los Angeles, California 90067
(310) 312-4000
ehudson@manatt.com
sroeser@manatt.com
smoses@manatt.com

Matthew F. Bruno
7 Times Sq.
New York, NY 10036
(212) 790-4500
mbruno@manatt.com

*Attorneys for Blake Lively*

## <u>LOCAL RULE 3.01(G) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), on July 24, 2025, Respondent's counsel conferred with counsel for Popcorned Planet by phone call regarding its objections to the Subpoena and attempted to reach an amicable agreement, including by narrowing the subpoena requests. Popcorned Planet did not agree to the proposed resolution and filed its motion to quash instead.


*/s/ Sigrid S. McCawley*
Sigrid S. McCawley

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 12th day of August 2024, I electronically

filed the foregoing with the Clerk of the Court using CM/ECF.


<u>*/s/ Sigrid S. McCawley*</u>
Sigrid S. McCawley

23