IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

POPCORNED PLANET, INC.,

    Movant,

v.                                                                 Case No.: 8:25-mc-28

BLAKE LIVELY,

    Respondent,

_____/

## DECLARATION OF ANDY SIGNORE

I, Andy Signore, hereby declare as follows:

1. I am over 18 years of age, and I have personal knowledge of all facts stated in this declaration. If called to testify, I could and would testify competently thereto.

2. I am the founder and CEO of Popcorned Planet, Inc. ("Popcorned Planet").

3. Popcorned Planet was founded as a Florida corporation in June 20, 2022 and has been maintained as a 501(c)(3) corporation since its inception.

4. Popcorned Planet is an independently funded, publicly accessible news and commentary channel with nearly 1 million subscribers and a large daily viewership, hosted on Popcorned Planet's designated YouTube channel.

5. I am employed by Popcorned Planet as the show's main host and investigative reporter, and I receive a salary from Popcorned Planet.

6. I am not the only paid employee of Popcorned Planet.

7. I am not employed or funded by any party in the *Blake Lively v. Wayfarer, et al* litigation. Popcorned Planet operates entirely through viewer support, advertising revenue, and merchandise sales.

8. Prior to founding Popcorned Planet, I had extensive experience in journalism and entertainment news reporting.

9. By way of example, from 2013–2017, I served as creator, host, and producer of ScreenJunkies, which is one of the most widely viewed digital entertainment news brands.

10. I also created the award-winning series Honest Trailers in 2012 which offered intelligent media criticism, industry satire, and earned Emmy recognition. Notably, Ryan Reynolds, Respondent's husband, appeared multiple times on Honest Trailers to promote the movie Deadpool, confirming that my work was trusted by Hollywood publicity teams—including those now adjacent to Respondent.

11. During my career as an entertainment news reporter, I have interviewed A-list Hollywood talent including Keanu Reeves, Dwayne Johnson, Benedict Cumberbatch, Halle Berry, Jeff Bridges, Woody Harrelson, among others.

12. I have also been contracted by studios and conventions to host Comic-Con panels for high-profile films including Captain America, with Chris Evans and Star Wars with the late Carrie Fisher.

13. My recent work includes the following, in small part:

   a) Daily live news reporting (as stated in my X Bio, *see* ECF No. 9-7)

   b) Investigative commentary

- Coverage of legal cases, including the Murder of Gabby Petitio, the Free Britney Movement, the *Johnny Depp v. Amber Heard* case, the *USA v. Sean Combs* case, celebrity sexual misconduct suits/allegations (examples: Russell Brand, Armie Hammer, Micheal Jackson)

- Notable Interviews: Johnny Depp, Natania Rueben (survivor of Club New York 1999 Sean Combs Shooting), Nives Gadoni (Former Madam involved in Sean Combs controversy), Big Homie CC (celebrity bodyguard), Meghan Markle's Half Sister Samantha Markle, Ex-Scientologist Aaron Smith Levin.

- I have also shared exclusive scoops (Example: "Anonymous Producer of Reality Show With Amber Heard's Sister," "Britney Spears/Michael Jackson Business Manager Exclusive Statement," "Revealed that Mads Mikkelsen Was In Talks To Replace Johnny Depp," as well as exclusive commentary and expert opinion from high profile lawyers such as Christopher Melcher and Ron Zambrano.

- I have produced 2 documentary series: "With Hate, Meghan" (a 4 part docuseries profiling the world's obsession with Meghan Markle) and "Meghan V Harry" (a 3 part docuseries featuring experts discussing what a Royal Divorce would look like in today's world)

14. The 2020 Tweet highlighted in Respondent's Cross Motion to Compel (ECF No. 8), in which I stated "I am not a paid journalist," is being presented entirely out of context. Most importantly, at the time the Tweet was posted, I was, in fact, a paid reporter working for FandomWire.com. That full tweet thread also includes a paragraph where I state that I report news, protect sources, and I distinguish between reporters and commentators. Lastly, the Tweet is more than five (5) years old, significantly predating Popcorned Planet's current news format.

15. The IMDb biography attached as Exhibit C to the Declaration of Sigrid McCawley (ECF No. 9-3), predates my work with ScreenJunkies and Popcorned Planet by years. It is publicly editable, and irrelevant to my current role.

16. The LinkedIn profile attached as Exhibit D to the Declaration of Sigrid McCawley (ECF No. 9-4), was last edited in 2018 and is therefore severely outdated. As such, it reflects a transitional period before Popcorned Planet had become a mature journalistic brand. As with the IMDb biography, this LinkedIn profile does not accurately reflect my present duties or platform.

17. Popcorned Planet as a channel, on average, makes multiple pieces of content a day, especially when a legal case is involved, as there are regular updates regarding filings and court hearings.

18. As of August 13, 2025, Popcorned Planet has 143 news videos with "Blake Lively" mentioned in the title, and 45 live streams. Many of these news videos feature legal experts as guests that weigh in on the court updates.

19. In 2024, Popcorned Planet only published 4 livestreams and 13 videos regarding Respondent, Ms. Lively, bringing a total view count of 2,538,788.

20. In 2024, Popcorned Planet published 511 news videos, and had 71,271,058 total views.

21. The news videos published in 2024 that mentioned Ms. Lively therefore accounted for only 3.3% of the videos published by Popcorned Planet, and only 3.5% of Popcorned Planet's total views.

22. For comparison, Popcorned Planet's coverage of the Sean Combs criminal case, which started in November of 2023 and is still ongoing, includes 86 live streams and 158 videos. The docket for that case currently includes just under 500 docket entries, and the trial is over. Respondent Lively's lawsuit is approaching 700 items, with daily docket updates, as well as widespread press attention which demands additional coverage.

23. In 2024, neither I, nor any other employee or agent of Popcorned Planet, had any contact with any source affiliated with the defendants in the *Lively v. Wayfarer* lawsuit.

24. All of Popcorned Planet's interviews and whistleblower sourcing involving the *Lively v. Wayfarer* lawsuit occurred in 2025, after the lawsuit was already public, and only in the context of investigative reporting and documentary production for Popcorned Planet.

25. Popcorned Planet has not received any payments or compensation of any type from the Wayfarer defendants or anyone on their behalf, nor has any employee of Popcorned Planet (including myself) received payment or compensation of any type from the Wayfarer Defendants or anyone on their behalf.

26. Popcorned Planet has maintained editorial independence at all times since its inception. Neither the Wayfarer defendants, nor anyone else acting on their behalf, have any control over the specific content or editorial decisions for Popcorned Planet's published videos and livestreams. Popcorned Planet has not taken any

instructions of any type from the Wayfarer defendants, or anyone acting on their behalf, regarding Popcorned Planet's published content.

27. During the time period at issue in the *Lively v. Wayfarer* lawsuit, I did not make any content or report any news on *behalf* of anyone other than Popcorned Planet.

28. Popcorned Planet was not commissioned, enlisted, or otherwise recruited by the Wayfarer defendants or anyone on their behalf at any time. Rather, I initiated the first contact with the Wayfarer defendants in January 2025, when I reached out to *both parties* for comment, in accordance with proper journalistic standards.

29. Specifically, on January 15, 2025, an employee of Popcorned Planet emailed both Blake Lively's attorneys and her publicist to invite comment, transparency, or on-the-record participation in Popcorned Planet's news coverage and the developing documentary. In the emails, Popcorned Planet disclosed the nature of the story, the tone of the coverage, and made clear my intention to include both sides — in accordance with the journalistic duty of fair outreach. A composite copy of the outgoing emails is attached as Exhibit "A" hereto.

30. On January 23, 2025, Ms. Lively's publicist declined the invitation to comment, responding "No thank you." Ms. Lively's attorneys never responded to the email. A copy of the email response from Ms. Lively's publicist is attached as Exhibit "B" hereto.

31. All of the sources that provided Popcorned Planet with information regarding the production of the film "It Ends With Us" did so only upon assurances of confidentiality and anonymity. Betraying this trust could destroy my business, as well as causing great distress to those who fear that they are in danger for speaking out or that they could be blacklisted in the entertainment industry.

32. Due to the nature of the materials sought by the subject subpoena, compelled disclosure would expose certain trade secrets of Popcorned Planet.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 22nd day of August, 2025.

_____
Andy Signore