# EXHIBIT 2

1                IN THE UNITED STATES DISTRICT COURT

2                  MIDDLE DISTRICT OF FLORIDA

3                       TAMPA DIVISION

4

5    POPCORNED PLANET, INC.,              )
                                          )
6            Movant,                      )
                                          )  Civil Docket
7       vs                                )
                                          )  No. 8:25-mc-28-WFJ-LSG
8    BLAKE LIVELY,                        )
                                          )
9            Respondent.                  )
     _____     )

10

11
                        **MOTION HEARING**
12

13                  Heard in Courtroom 9B
          Sam M. Gibbons United States Courthouse
14              801 North Florida Avenue
                  Tampa, Florida 33602
15            Wednesday - October 22, 2025
                2:00 p.m. - 2:36 p.m.
16

17        BEFORE THE HONORABLE LINDSAY SAXE GRIFFIN

18            UNITED STATES MAGISTRATE JUDGE

19

20            LORI ANN CECIL VOLLMER, CSR, RPR
                Federal Official Court Reporter
          Sam M. Gibbons United States Courthouse
21           801 North Florida Avenue, Room 1221
                  Tampa, Florida 33602
22          Lori_CecilVollmer@flmd.uscourts.gov
                    (813) 301-5336
23

24    Proceedings transcribed via courtroom digital audio recording
      by a court reporter using computer-assisted transcription.
25
                    **UNITED STATES DISTRICT COURT**
                    **MIDDLE DISTRICT OF FLORIDA**
                        **TAMPA DIVISION**

1

APPEARANCES

2

3  PRESENT ON BEHALF OF THE MOVANT,
   POPCORNED PLANET, INC.:

4

        MR. JEFFREY LEE GORDON,
5       MANEY & GORDON, PA
        101 East Kennedy Boulevard
6       Suite 3170
        Tampa, Florida 33602-5151
7       (813) 221-1366
        j.gordon@maneygordon.com
8

9

   PRESENT ON BEHALF OF THE RESPONDENT,
10 BLAKE LIVELY:

11      MS. MERYL CONANT GOVERNSKI,
        DUNN ISAACSON RHEE LLP
12      401 Ninth Street, N.W.
        Suite 800
13      Washington, DC 20004
        (202) 240-2900
14      mgovernski@dirllp.com

15

16

17

18

19

20

21

22

23

24

25

                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION

1                          PROCEEDINGS

2        (Open court.)

3        (Court called to order.)

4              COURTROOM DEPUTY:  Good afternoon.

5              This Court calls *Case No. 8:25-mc-28-WFJ-LSG,*

6    *Popcorned Planet, Incorporated versus Lively*.

7              THE COURT:  All right.  Good afternoon.

8              I'll have appearances from counsel beginning

9    with counsel for the movant.

10             MR. GORDON:  Good afternoon, Judge.

11             This is Jack Gordon on behalf of the movant,

12   Popcorned Planet.

13             THE COURT:  Thank you, Mr. Gordon.

14             Oh, Ms. Governski, I think you're still muted.

15             MS. GOVERNSKI:  Thank you.  Pardon the error.

16             Good afternoon, your Honor.  Or good afternoon,

17   rather.

18             This is Meryl Governski on behalf of Ms. Lively.

19             THE COURT:  All right.  Thank you.

20             Okay.  So we are here to talk about the motion

21   to quash.  There's a motion, an -- an amended motion to

22   quash.  I've reviewed the parties' briefs and attachments

23   and some of the declarations that have been filed.

24             And before we begin, I -- I do want to just say

25   I had hoped to get to this sooner.  I appreciate the parties'

1  patience, but you do have my full attention now and I'm

2  committed to getting this resolved as expeditiously as

3  I can.

4          So let me just start with a couple of

5  observations and then I'll hear from counsel.  I do have

6  some specific questions and thoughts.

7          But so it seems to me -- and -- and Mr. Gordon,

8  can you tell me how to pronounce the last name of Popcorned

9  Planet's executive?

10          Is it Signore or Signore?

11          MR. GORDON:  It is.  Andy Signore, Judge.

12          THE COURT:  Signore.  Okay.

13          So it seems to me -- and both parties have

14  presented information about whether Mr. Signore qualifies

15  for this journalist privilege and the information that

16  he has falls within that privilege.

17          And so it seems to me that there are a couple

18  of things that can be true here.  Mr. Signore could be

19  a professional journalist and -- at certain times or

20  potentially all the time engaged in actively gathering

21  news.

22          But it could also be that he's a professional

23  journalist and that some of what he was doing or all of

24  what he was doing in this particular instance does not

25  qualify as news gathering.

1          So I think both of those could be true

2   and what -- what I -- I think what I want to do today

3   at least -- or my goal today is to get a little more

4   specific because now I'll admit that I don't deal

5   with the journalist privilege that often, but I do

6   deal with a lot of other privileges.  And when we deal

7   with those, they are specific.  They are specific to

8   particular documents and instances.  And so we'll get

9   there.

10          But -- but when I look at this, I think I

11   look at what -- what Ms. Lively has requested and what

12   Mr. Signore has asserted and I think -- and it seems to

13   me that there are categories of information here that

14   could potentially not be covered by the privilege.

15          Well, I'll just give an example.  There

16   are -- there's a request for any agreements that were

17   effec- -- particular agreements that were executed

18   concerning particular subjects.

19          Now, a contractual agreement, does that fall

20   within some sort of news gathering?  I don't know that

21   it does.  Is it a -- it seems more transactional and

22   not necessarily -- not something that would fall within

23   the definition of a news gathering information or

24   confidential or nonconfidential source.

25          So -- so let me just -- let me just ask before

1  I continue on.  Mr. Gordon, what is the scope of the

2  information that we're talking about here --

3            MR. GORDON:  Well, let --

4            THE COURT:  -- that has been requested?

5            MR. GORDON:  -- let -- let -- let me make it --

6  let me make it easier for this Court --

7            THE COURT:  Yes.

8            MR. GORDON:  -- as it relates to that very

9  particular -- and there are no agreements.

10            THE COURT:  Okay.

11            MR. GORDON:  There are no contracts.  There

12  are no verbal agreements.  There are no email communications

13  that would suggest there's an agreement.  It's again just --

14  just to answer it directly, your Honor.

15            THE COURT:  Okay.  All right.  Well, then --

16  then what -- I guess in terms of other information --

17  because there -- there has to be -- I guess if you're

18  asserting a privilege, then there has to be some information

19  that you view as potentially responsive to this subpoena

20  that would fall within the privilege.

21            Do you -- do you know what the scope of that

22  information is?  Like, how big are we talking?  Like --

23            MR. GORDON:  We're talking essentially

24  communications --

25            THE COURT:  Okay.

1          MR. GORDON:  -- with the parties.

2          And in all of those communications, I can

3    tell you, Judge, were -- were -- occurred subsequent

4    to Ms. Lively filing her lawsuit against the Wayfarer

5    defendants.  So one of the talisman of determining

6    whether or not the journalistic privilege applies is

7    whether or not the information being gathered is being

8    gathered for purposes of being disseminated and published

9    to the -- to the audience.

10          And -- and clearly the -- the catalyst for

11    the information gathering performed by Mr. Signore and

12    Popcorned Planet was the very initiation of Ms. Lively's

13    lawsuit in the Southern District of New York in front

14    of front of Judge Liman against the Wayfarer defendants.

15          THE COURT:  Okay.  Have you -- I guess, have

16    you -- have you gathered that information and have --

17    like, has there been -- what I'm used to, Mr. Gordon,

18    is -- is -- there's a volume of information that's been

19    reviewed and there's been some sort of privilege log

20    produced.

21          Have you produced a privilege log as to this

22    information?

23          MR. GORDON:  No, your Honor.

24          THE COURT:  No.

25          Okay.  But you do have -- you do have a sense

 1    that all of this information is after the filing of the

 2    lawsuit in December of 2024?

 3               MR. GORDON:  I can absolutely say without any

 4    reservation, yes.

 5               THE COURT:  Okay.  And --

 6               MS. GOVERNSKI:  Can I respond to that, your

 7    Honor?

 8               THE COURT:  Yeah.  Go ahead.

 9               MS. GOVERNSKI:  Okay.  Well, I'm holding a

10    document in my hand from 2024 that Mr. Signore is on.

11    So I don't think that that representation is fully accurate

12    and we literally, moments ago, just filed a spoliation

13    motion in the underlying litigation against all of the

14    defendants for spoliating evidence between August of 2024

15    and January of 2025.

16               So what we have here is taking the benefit

17    of the doubt of what an individual has said when there

18    hasn't necessarily been a search, there hasn't been a

19    privilege log produced and it's simply just not credible

20    that Mr. Signore organically decided to publish the

21    precise anti-Miss Lively narrative, the precise month

22    and year that the smear campaign began without any

23    communications with any of the Wayfarer defendants.

24               So not only is the claim that there were no

25    2024 communications not credible, it's belied by the

1   scant amount of evidence that we have received.  We

2   received one communication from -- between Mr. Signore --

3   I'm sorry -- between Popcorned Planet and the defendant

4   and we know that the defendants were using Voice Memos

5   and Signal to communicate with content providers and

6   that they have spoilated that evidence.  So that's first

7   and foremost.

8        Second of all, this focus on we're excused

9   from anything post-2025 is flatly irrelevant and

10  inconsistent with the hearings -- with these rulings

11  in the -- in the underlying court.

12       The Wayfarer defendants made a similar argument

13  that they don't have to produce anything into 2025.  The

14  judge in that case -- in that -- and Judge Liman rejected

15  that claiming that communications into 2025 are relevant

16  because Ms. Lively filed an amended complaint that claims

17  the retaliatory smear campaign continued into 2025,

18  including by filing their own lawsuit against Ms. Lively

19  that has been dismissed and we have reason to believe

20  that Mr. Signore was communicating with the Wayfarer

21  defendants about that retaliatory lawsuit into 2025.

22       So Mr. Gordon makes a big deal out of this

23  pre-2024 and post-2024.  It's -- it's not true.  And

24  then on top of it not being true, it's really irrelevant.

25  Communications in 2025 would be responsive and we proffer

1   we would not be subject to the Reporter's Privilege.

2          Oh, and then also, your Honor, one more thing

3   just about there are no agreements.  So the subpoena

4   isn't asking solely for formal agreements or formal

5   contracts.  It's any agreement, like, sure, I'll publish

6   what you're asking me to publish.  Sure, I'll -- I'll

7   post that.  Those are informal agreements, which are

8   expressly defined in the subpoena.

9          And it's not clear to me whether Mr. Signore

10  or Popcorned Planet has done a thorough review to assess

11  whether any of the communications do reflect to that

12  sort of an informal agreement and we agree with your

13  Honor that those kind of agreements do not reflect the

14  type of communications that would be protected by the

15  privilege if any privilege applies.

16          THE COURT:  Okay.

17          MR. GORDON:  That's a bullshit statement.

18          THE COURT:  Mr. Gordon, did you want to respond?

19          MR. GORDON:  Again, I -- I -- I can reiterate

20  there are no agreements, formal or informal, written

21  contracts, email.  There are no verbal agreements to which

22  he could testify to.  There are simply no agreements.

23          THE COURT:  But there are communications and --

24          MR. GORDON:  There are.

25          THE COURT:  -- you're -- and what you're saying

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    today is that the scope of the communications that --

2    that -- that you've been able to get your hands around

3    is 2025?

4           Are you saying there's no communications

5    in 2024 that would be responsive to the subpoena?

6           MR. GORDON:  That -- that -- that is unequivocally

7    correct, your Honor.

8           THE COURT:  Okay.

9           MS. GOVERNSKI:  Can I ask your Honor if --

10          THE COURT:  Yes.

11          MS. GOVERNSKI:  -- if he searched

12   popcornedplanet@gmail.com for responsive communications

13   in 2024?

14          THE COURT:  Yeah.  So I think that's where --

15   that's where -- let me -- let me kind of go to the next --

16   the next part of this.

17          So what I would -- what you would typically

18   see in -- is that we would have these requests.  The

19   parties would discuss them to the extent that there are

20   objections to the breadth of -- of the request or -- or

21   any other objections.

22          Then the -- the responding party would do a

23   search and would produce things that are responsive and

24   not privileged and withhold privileged information and

25   produce a privilege log.  That way, the subpoenaing party --

1  I think it's difficult here -- a little difficult here,

2  Mr. Gordon, because it is a qualified privilege and

3  Ms. Lively can overcome it with a certain showing,

4  but we're kind of talking about this all in a -- in

5  very broad sense.

6          I mean, you typically would have -- I think

7  about it just the way I would a claim of attorney/client

8  privilege, right?  Attorneys are not always engaged in

9  privileged or protected activities, but they make -- you

10 have to make a specific claim to that privilege and then

11 the other side can look -- and certainly here, we wouldn't --

12 if there are confidential sources, they would have to be

13 on a privilege log identified as a confidential source,

14 but there would at least be some information given about

15 what the item is that's -- that is claimed to be privileged.

16         That way, Ms. Lively can look at that and make

17 her own evaluation and then bring it to me and then I could --

18 I could look at that potentially in camera or whatever and

19 make a decision.

20         But looking at this sort of in a vacuum, I -- I

21 can't decide that these items -- that all of this information

22 falls within a journalist privilege just based on, you know,

23 let's say I -- I did -- I'm not finding this, but what if

24 I did fined that Mr. Signore is a journalist and could

25 potentially fall under this category?  It's the same thing

1    as finding he's a lawyer, right?

2              MR. GORDON:  It's --

3              THE COURT:  I mean, he might not always be

4    engaged in -- in news gathering -- active news gathering.

5    And so there may be things that -- that are particularly

6    here that are being asked for that don't fall within that

7    privilege.

8              Do you see what I'm saying, Mr. Gordon?

9              MR. GORDON:  I -- I -- yes and no, Judge.

10   Res- -- and I say this with the utmost respect.  I -- I

11   promise.

12             THE COURT:  Please disagree with me.  I understand

13   you're doing your job.

14             MR. GORDON:  The attorney/client privilege is a

15   pretty good analogy, but it's like a "spork," right?

16             THE COURT:  Yeah.

17             MR. GORDON:  It's not quite a fork.  It's not

18   quite a spoon.

19             Here's the problem, and this is a motion to

20   quash a subpoena, Judge, because the subpoena itself is

21   improper.  They haven't exhausted all the remedies for

22   purposes of garnering information.

23             You pointed specifically at one of the --

24   one of the seven requests.  I would ask the Court to take

25   another -- a glance through those for the following

1  reason.  All of the information that's being requested

2  would otherwise be within the course and scope of --

3  of -- of -- it would be in the scope and control of the

4  party -- to the Wayfarer defendant parties or their

5  agents and the case law, especially in the Eleventh

6  Circuit -- we can talk about the three various privileges,

7  the Florida common law privilege, we can talk about the

8  statutory privilege, but then again the Eleventh Circuit

9  privilege is the most consuming.

10         I mean, this circuit has always, in the state

11  of Florida, staunchly, staunchly is -- is -- it protects

12  the journalistic privilege more so -- and again, the

13  Eleventh Circuit *Price* case, if you remember, the Alabama

14  case.  That was the Crimson Tide head coach where he was

15  involved in that scandal in Pensacola with some -- some

16  exotic dancers, they determined that the Alabama statute

17  didn't apply.

18         But again, the Eleventh Circuit precedent as

19  it relates to the First Amendment does apply.  And

20  again, respectfully, the defendant has not exhausted all

21  opportunities to garner the very same information from

22  these party defendants.

23         If we look at the Court, and the Court can take

24  judicial notice, I'm hopeful that it will, we had recently

25  filed a request for the Court to take judicial notice of

1  what's been occurring in the Southern District of New

2  York.  There was some delay apparently on the part of

3  the defendants.  His Honor, Judge Liman, ordered on

4  September -- had an order to compel information.  If

5  I remember correctly, there was something like 80,000

6  documents provided and the Court granted another ten

7  days to take depositions to do more discovery and at

8  that point in time Ms. Lively had the opportunity to

9  object to the information that was -- that was sought

10  to be discovered or to object to the responsive -- the

11  proper responsive nature of what was provided.

12          There, she didn't object to anything that

13  related to Andy Signore and there were very specific

14  production requests, which I've asked this Honorable

15  Court to take judicial notice of, relating to Popcorned

16  Planet and Andy Signore.

17          In that -- in the Southern District in

18  front of Judge Liman, Ms. Lively specifically filed a

19  motion to compel because she found that the information

20  was not sufficiently responsive as it related to Signal

21  chat information, but there was never any effort whatsoever,

22  deposition-wise or motion to compel-wise, to ask these

23  defendants to give me more relating specifically to

24  Mr. Signore and Popcorned Planet.

25          Again, I've cited the *Price* case, and that cites

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1   obviously the **Overstreet** case, where they found taking

2   117 depositions didn't exhaust all opportunities to

3   garner the information pursuant to the rule from the

4   other parties.

5          THE COURT:  Well, so that's -- I think that's

6   a question -- I'm sorry, Mr. Gordon, I --

7          MR. GORDON:  No, not at all.

8          THE COURT:  -- don't mean to interrupt.

9          I think that's a question of whether Ms. Lively

10  can overcome the -- the privilege, but whether the subpoena

11  itself -- I mean, you can serve a Rule 45 subpoena.  The

12  rule doesn't require you necessarily to exhaust all of your

13  other efforts before serving a third party.

14         I mean, there is a burden analysis in Rule 45

15  that's different than what you have with a party, but --

16  and that is something that -- that is looked at, but I

17  think what you're getting at is her overcoming the

18  privilege.

19         So I think we have to first establish that

20  the privilege applies and what I'm saying is I think to

21  establish that the privilege applies, Popcorned Planet

22  and Mr. Signore need to make that -- need to start that

23  privilege expressly and specifically as they would --

24  as anyone -- as anyone else would with asserting a

25  privilege because other -- you know, I can't just decide

1  broadly that he isn't -- because he qualifies as a

2  journalist that everything he does is privileged.

3           I think there has to be -- I think there

4  has to be a more specific assertion that -- that --

5  that the communication at issue here falls within the

6  privilege because there can be communications or things

7  that he is doing that don't qualify as news gathering --

8           MR. GORDON:  I would respect- --

9           THE COURT:  -- that don't qualify as -- you

10  know as to the extent he is doing something that's --

11  that's not -- that doesn't qualify as actively gathering

12  the news, then it wouldn't fall within the privilege.

13           MR. GORDON:  I would respectfully suggest that

14  the content doesn't define what the scope of the journalistic

15  privilege is.  It's whether or not the activities that are

16  being pursued are done in furtherance of and with the

17  intention of garnering information that can be disseminated

18  to the -- to the public.

19           So it's information that he has otherwise

20  published.  If he hasn't used it, there's no reason for

21  them to otherwise request it.  I would respectfully

22  suggest again -- again, there's three opportunities for

23  the journalistic privilege to apply.

24           One is by virtue by Florida common law and

25  that's not -- the scope of that is not super well-defined,

1  I'll agree with you.  It basically just says once the

2  privilege is invoked.

3           Well, by virtue of filing the motion to quash

4  and calling himself a journalist, that's probably sufficient

5  under the common law privilege.

6           Under the statute, it's a little bit more

7  specifically defined by Section (1)(a) -- I mean, under

8  the definition of Section (1)(a); if you're gainfully

9  employed, if you're doing it for livelihood, whether

10 you're an independent contractor, whether you're a salaried

11 employee.  And again, I think that showing has been made

12 by virtue of the declaration and by virtue of the information

13 that's otherwise been provided.

14          And then we get to the Eleventh Circuit, which

15 I think again it's not so much a function of whether he's

16 required to provide a privilege log or what the substance

17 of the information that he's seeking to protect is.  It's

18 a function of whether or not it was garnered during the

19 course of -- of performing journalism, your Honor.

20          THE COURT:  Well, and I think that's -- that's

21 the contextual question that I can't -- that I don't

22 think can be answered just through a declaration from

23 Mr. Signore saying that he is a journalist engaged in

24 news gathering activities.

25          I mean, Rule 26 requires a specific express

1  showing of -- expressed -- it requires you to expressly

2  make the claim and then describe the nature of the

3  documents and to do so in a manner without revealing

4  the information that enables the other party to assess

5  the claim.

6           And the Eleventh Circuit also requires whether

7  it's the attorney/client privilege or a Fifth Amendment

8  privilege, you can't make a blank assertion of a privilege.

9  It has to be specific.

10          And if you think you have a -- if they apply

11 that with a Constitutional right such as the Fifth

12 Amendment, why wouldn't we be required to make a specific

13 showing with the journalistic privilege?

14          It just doesn't seem to me to fit that Mr. Signore

15 can come in here and say, well, I'm a journalist engaged

16 in news gathering activities and so everything I -- every --

17 all the documents that I have, their responses fall within

18 that privilege.  I -- I don't think I can make that

19 determination on -- on the record that I have here.  I think

20 that -- I think it needs to be made specifically.

21          MR. GORDON:  I -- I -- I understand and we are

22 not in any way opposed to otherwise providing a privilege

23 log, your Honor.

24          THE COURT:  Okay.  Ms. Governski, Mr. Gordon

25 and I have been going for a while.  I wanted to give you

1   an opportunity to jump in if you have points to raise.

2          MS. GOVERNSKI:  I appreciate that, your Honor.

3          First of all, I think what you're saying makes

4   exact sense.  For instance, how can we even evaluate

5   exhaustion when we don't know exactly the nature of the

6   communications?

7          I do fervently disagree with Mr. Gordon's

8   explanation of depositions to which he was not part of

9   and I don't believe he has privy access to or the docket

10  in that case, which we filed seven motions to compel.

11  We filed a motion for spoliation.

12          The -- the test -- the standard in the Eleventh

13  Circuit, when there are potentially two sources, Mr. Signore

14  and another individual, is not you have to go out and depose

15  100 people in order to get those communications.

16          I would refer your Honor and Mr. Gordon to see

17  *CNN v. Black* and *Christ Covenants v. Town*, which we cite

18  in our motion, which expressly says when there's a chance

19  that documents have been destroyed or spoiled, exhaustion

20  is met.  So, you know, if we get to exhaustion, if we want

21  to get into that, we can get into that, including in the

22  context of a privilege log.

23          But I would proffer, your Honor, this all or

24  nothing, black or white approach that Mr. Gordon is trying

25  to take does not work for many of the reasons that your

1  Honor has articulated, but also because if -- if we --

2  if the Court were to adopt that standard, it would

3  basically mean anyone who throws the website out,

4  collects money for merch, pays himself a salary, can

5  say he is a reporter and be exempt from the rules of

6  discovery.  That is not what Florida's privilege protects

7  and that's not what the Eleventh Circuit or the common

8  law privilege protects.

9          They are intended to protect independent

10  journalism, which even if the cases that they cite,

11  BuzzFeed or the Street, both of those websites have

12  editorial standards.  They -- they subscribe to editorial

13  standards.  They are not for-profit organizations designed

14  to push content to create more clicks for clients or

15  points of view that happen to be in a particular

16  individual's daily wick or -- or a preference, political

17  preference, personal preference, however you want to

18  describe it.

19          So I think we need to take a real hard look

20  at whether the privileges apply, not only the Florida

21  privilege, but whether the common law privilege applies

22  when we look at the animating privilege -- the animating

23  principle of these privileges.

24          When we look at *Schoen*, when we look at some

25  of the cases that even Mr. Signore cites, all of those

1   cases show that the privilege attaches to an independent

2   journalist who is holding people accountable and there's

3   some indicia of a traditional professional journalist

4   and none of that is -- is favored here.

5          But again, the Court can avoid that by saying

6   that it is overcome or even by considering a waiver.  You

7   know, Mr. Signore filed what amounts to an improper reply.

8   I understand he may say it was in opposition to a motion

9   to compel, but really he should have narrowly then be --

10  probably just the last two pages is probably what was

11  proper.

12         The affidavit, talking about how he's a

13  professional journalist, should have come in his motion.

14  So they're not even necessarily properly before the

15  Court, but he also attached two emails that he sent to

16  counsel for Ms. Lively, but he didn't attach any of his

17  communications with counsel for the Wayfarer parties.  So

18  he is selectively using his privilege when it serves him

19  and not whether it doesn't and that potentially is waiver,

20  your Honor.

21         So I do think there are many ways for the Court

22  to approach this waiver finding it doesn't attach.  If it

23  does attach, it's overcome.  I do think your Honor could

24  find waiver now.  I think it could find it doesn't attach

25  now and I think it could find the three factors met, but

1   we certainly do not object to a privileged log as long as

2   that's accompanied by a thorough search of Mr. Signore's

3   Signal, of his text communications, of Popcorned Planet's

4   Gmail, of Mr. Signore's own Gmail, of his X.  We know, for

5   instance, based on the first response -- the first request

6   in the subpoena that he's receiving communications from

7   the Wayfarer defendants -- defendants through some sort

8   of a Dropbox or a Google drive.  We -- those are not sure

9   communications.  We would expect him to search those.

10          We would expect Popcorned Planet to search --

11   they claim now they have employees.  The YouTube channel

12   doesn't list any employees.  So we would expect a search

13   of the employees' communications.

14          So as long as there's good faith effort to do

15   a full collection and search and a robust privilege log,

16   we think that that's a good way to go.  I'm just a little

17   bit skeptical that we'll get a full privileged log as

18   opposed to, you know, whatever happens to be searched on

19   a phone and then we're stuck kind of debating the merits

20   of a privilege log.

21          THE COURT:  Well, I mean, so let's -- let's --

22   let's step back.

23          I mean, I think again to do this sort of

24   systematically, we need to begin with their requests and

25   talk a little bit about their requests and that -- and

 1  then -- which is, you know, typically what -- what counsel

 2  would do, and then talk about the scope of the search and

 3  the custodians or whatever -- whatever is being done, but

 4  let's just talk initially about the requests.

 5          How -- let me ask you before -- counsel, before

 6  we do that, have you all had any discussions already

 7  about -- other than about the privilege, but about the

 8  scope of the requests and -- and any sort of -- I guess,

 9  Mr. Gordon, any request to narrow those or to get specific --

10  more specific in those requests?

11          MR. GORDON:  I think I'll give you my spork

12  response again, Judge, and I apologize for doing so, but

13  we -- there was another subpoena that was issued to Google.

14  So I had -- we had an opportunity to conference and confer

15  with Meryl about those.  But in terms of this particular --

16  these particular responses, I would have to say no.

17          THE COURT:  Well --

18          MS. GOVERNSKI:  I --

19          THE COURT:  Yes, go ahead.

20          MS. GOVERNSKI:  I'm sorry, your Honor.

21          THE COURT:  No, go ahead.

22          MS. GOVERNSKI:  Yeah.  I don't think that's

23  entirely accurate.  I think it was reversed.  We did --

24  we did confer on this one, not on the Google subpoena,

25  because my client was handling that one.

1          We conferred on this one.  I suggested that

2   I would be willing to talk about ways to narrow if there

3   are specific ways and they said they would file a motion

4   to quash.  So I did -- I did have an overture of attempting

5   to narrow it.

6          I think I emailed that and followed up with a

7   phone call suggesting that we would be willing to narrow

8   it and that was rejected in --in lieu of a motion to quash.

9          We also haven't even received responses and

10  objections.  So -- so -- so that's where we are.

11         I would note that we intentionally drafted these

12  to be quite narrow, to be targeted towards what we believe

13  exists.  And so, you know, I think it's -- it's difficult

14  for me to sit here and imagine specific ways to narrow it,

15  but certainly we are always open to conferring with counsel

16  as we have been this whole time on -- on their ideas to

17  narrow it.

18         THE COURT:  Mr. Gordon, do you have a particular --

19  again, aside from the privilege that -- objection that you've

20  raised, do you have particular concerns about some of these

21  document requests in terms of their scope?

22         MR. GORDON:  Not -- not in terms of their scope.

23  I just don't think there's a tremendous amount of responsive

24  information.  But I -- I -- again, it appears to me the

25  vast -- and maybe I'm ahead of myself now.  But again, the

 1  vast majority of them appear to be for communications

 2  with the Wayfarer defendants, with parties, and I -- I

 3  think that garnering them from a third party on the

 4  premise that there's been some type of spoliation when

 5  there -- again, when there's no effort on the part of

 6  the defendant to otherwise get those documents elsewhere

 7  given the nature again of the journalist attic privilege,

 8  which I believe applies and we can have further discusses

 9  about that.

10        But I think it's -- it's respectfully similar

11  to the complaints that I'm now hearing for the first time

12  about our reply to their motion to compel.  If -- when

13  you say it's not -- when defense -- when Ms. Lively's

14  counsel says it's not before this Court, well, if it was

15  improper, file a motion to strike then.

16        In other words, do what you're supposed to do

17  pursuant to the rules before you go digging into somebody's

18  journalistic privilege.  That being said, again, I -- I

19  don't have a problem with the scope, your Honor.

20        MS. GOVERNSKI:  I'm sorry, your Honor.

21        THE COURT:  Okay.  Well -- well, yeah.  No.

22  It's -- if it's about the, you know -- I didn't frankly

23  notice that issue until more recently.  Typically --

24  typically, we'd be the enforcer of that rule and, you

25  know, I -- I guess I'm sort of -- it's a little -- it's

 1   a little difficult to say, well, she should've moved to

 2   strike it because that -- you know, we didn't follow the

 3   rule.

 4          In any event, I think it's there -- it's there

 5   and it's -- and I'd just be inclined to consider it in

 6   the scope of what we're doing even though it was -- I

 7   think it's questionable given there was, like, a

 8   counter-request to compel and then maybe it was sort of

 9   responsive to that.  In any event, I don't want to get

10   sidetracked with that.

11          Let's -- let's focus on -- on the issue of

12   the request.  So -- so it sounds like, Mr. Gordon, you're

13   saying that in terms of the scope of the request, you

14   don't -- you're not searching for any particular type

15   of -- of any narrowing of those.  Your view is just that

16   what -- what's responsive here is going to be covered by

17   the privilege, is --

18          MR. GORDON:  Yes, your Honor.

19          THE COURT:  -- that accurate?  Okay.

20          MR. GORDON:  Yes, yes.

21          THE COURT:  Okay.  Then I think then we need

22   to -- unless the parties want to do this on their own,

23   I mean, I think in terms of the scope of the search, you

24   know, that's -- again, that's typically something that

25   counsel would do with here's the custodians or the

1  accounts you're going to search and here's the search

2  terms.

3        You know, you all know -- certainly, Ms. Governski

4  and Mr. Gordon, since you've been involved, know this case

5  better than I do.  So that may be something that's easier

6  for you to do after this hearing than to do it right now.

7        But what -- here's -- I guess here's what I'm

8  thinking and here's what I'm inclined to do.  I'm inclined

9  to tell the parties that you need to -- you need to confer

10  about the scope of the search and if you can't agree on

11  the scope of the search -- what I -- actually, what I think

12  I might do is just I can set a status conference for next

13  week and ask you all to confer about the scope of the

14  search.

15        If you can't agree on it, then let's talk about

16  it next week and we can -- can I decide it.  You can bring

17  it to me and I can decide it, but see if you can agree on

18  it first because I think that would be a better result for

19  everybody.

20        And then once we've got that down, Mr. Gordon,

21  you do the search and you put together a privilege log

22  for what believe is covered under this journalist

23  privilege.  And in that privilege log, of course, you

24  know, do not include any details that would reveal the

25  information that is itself privileged or protected.  If

1  there's a confidential source, just call it a confidential

2  source.

3          But -- but it would need to track -- and I would

4  suggest you're probably familiar with the Middle District

5  Civil Discovery Handbook.  It has a suggestion for what a

6  privilege log should include.  It's not binding, but it's

7  a suggestion and I think it's a good one.

8          And provide that privilege log and then that

9  way, Ms. Governski, once we've -- once we've got that,

10  then we can -- I think we can have a more meaningful

11  discussion about overcoming the privilege and we can --

12  we can do that then.

13          So why don't -- let me -- let me get a time

14  from you all for next week when we can reconvene and

15  we'll do it by Zoom.  I'm -- I'm pretty open next week

16  if you wanted to do -- what, today's Wednesday.  So we

17  can do after Wednesday maybe.  Thursday or Friday?

18          Do you all have any time Thursday or Friday

19  next week?

20          MS. GOVERNSKI:  Either of those days is fine

21  for me, your Honor.

22          THE COURT:  Okay.

23          MR. GORDON:  In the afternoon on Thursday or

24  Friday, either the 30th or 31st, that would be fine for --

25  for us, your Honor.

1        THE COURT:  Okay.  How does -- how does 3:00

2   o'clock on Thursday look?

3        Does that --

4        MS. GOVERNSKI:  Perfect.

5        THE COURT:  Does that work --

6        MR. GORDON:  With the --

7        THE COURT:  -- for you, Mr. Gordon?

8        MR. GORDON:  With -- I -- with the caveat that

9   I am scheduled for a mediation in a -- again, I don't know

10  how to put this lightly, but a dead baby case.

11       THE COURT:  Oh, okay.

12       MR. GORDON:  But it -- it should be fine.  Again,

13  I -- I would say Friday is probably a little bit better.

14       THE COURT:  How about -- okay.  Friday?  Let's

15  see here.

16       What about -- what about November at 11:00?

17       MR. GORDON:  That'll work really, really well,

18  Judge.

19       THE COURT:  Okay.

20       MS. GOVERNSKI:  That's fine for me, your Honor.

21       THE COURT:  Okay.  So let's do -- let's do

22  Friday at 11:00 a.m. on the 31st and I'll just enter an

23  endorsed order directing the parties to confer about the

24  scope of the search on the subpoena and be prepared to

25  discuss any issues with that scope on next Friday.

1          If you all are able to agree to the scope

2   of the search, then you can email my chambers and let

3   us know and we can -- like, I would say we could cancel

4   the status, but we will need -- after that search, I

5   will probably need to talk, Mr. Gordon, about if there

6   is additional searching that you need to do, what kind

7   of time you need to do that and prepare a privileged

8   log.

9          So sorry.  I'm sort of thinking out loud.

10  Why don't we just go ahead and we'll have the status

11  and we'll talk about next steps.  But just be prepared

12  to discuss whether if you haven't agreed, then what

13  the disagreement is.  And then if you have agreed, let's

14  think about what time you need, Mr. Gordon, to do the

15  search and to create the privilege log and then we can

16  move from there and then set further deadlines.

17          MR. GORDON:  Yes.  Yes, your Honor.

18          THE COURT:  As I said, I know this has been

19  sitting for a couple months and I'd like to get it

20  resolved expeditiously, but I know you need time to do

21  this appropriately.  So...

22          MR. GORDON:  Yes, your Honor.

23          I -- I understand and I appreciate the opportunity

24  to have been heard.  So thank you.

25          THE COURT:  Okay.

1          MS. GOVERNSKI:  Your Honor?

2          THE COURT:  Yes.  Go ahead.

3          MS. GOVERNSKI:  Just on the timing, you know,

4    our summary judgment is due November 12th, I think, or

5    14th.  So it -- and discovery is closed.  So I do

6    appreciate your sensitivity to the timing.  I think it

7    will make collection and search have to be pretty

8    compressed here.

9          THE COURT:  It sounds like Mr. Gordon has

10   already -- already has sense or maybe has already done

11   some amount of searching already.

12          I mean, given that there's a declaration from

13   Mr. Signore about agreements or contracts, I mean, it

14   sounds like there has already been some search.

15          MS. GOVERNSKI:  Yeah.

16          THE COURT:  So I'm sort of expecting that --

17   again, leaving open, Mr. Gordon, of course, that you

18   need time to do this, but my anticipation is that based

19   on our conversation today, a lot of searching has already

20   happened, maybe there's some additional searching that

21   needs to be done and then it's just a matter of putting

22   together a privilege log.

23          MS. GOVERNSKI:  Yeah.  Given that he said there's

24   none -- no comms in 2024 and I have some -- I have one, you

25   know, I just want to make sure that we're not relying on a

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    search that is not comprehensive, but -- but the point is

2    obviously very well taken.

3            One thing I just -- I didn't want to let go

4    unchecked, Mr. Gordon referred to a judicial notice filing.

5    I haven't seen that or received that.

6            THE COURT:  I haven't seen it either.

7            MS. GOVERNSKI:  I don't know what you're talking

8    about.  I do take significant umbrage with claiming that

9    we have not been persistent or attempted to seek these

10   communications from the defendants.  I think the -- the

11   record seven motions to compel and a motion for spoliation

12   blatantly contradicts that.  So I -- I just didn't want

13   that to go unsaid.

14           THE COURT:  Thank you.  I appreciate that.

15           We -- we will have -- I think that's -- I

16   think that's going to be -- I've -- I've heard both

17   parties and I've read your briefs and I think that's

18   probably going to be our topic for another day that

19   we'll get into more thoroughly, but I do understand what

20   you're saying, Ms. Governski.

21           MS. GOVERNSKI:  Thank you so much.

22           THE COURT:  All right.  Well, thank you all

23   for your time.

24           We will be adjourned.

25           MR. GORDON:  Thank you, your Honor.

1       Be safe everyone.

2               (Whereupon, the Court adjourned

3            at 2:26 p.m.)

4                   --oo0oo--

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   UNITED STATES DISTRICT COURT   )

 2                                   )

 3   MIDDLE DISTRICT OF FLORIDA      )

 4

 5                   REPORTER TRANSCRIPT CERTIFICATE

 6

 7           I, LORI ANN CECIL VOLLMER, Official Court Reporter

 8   for the United States District Court, Middle District of

 9   Florida, certify pursuant to Section 753, Title 28, United

10   States Code, that the foregoing transcript is a true and

11   correct transcription of the stenographic notes taken by the

12   undersigned in the above-entitled matter, Pages 1 through 34,

13   and that the transcript page format is in conformance with

14   the regulations of the Judicial Conference of the United States

15   of America.  I further certify that I am not attorney for, nor

16   employed by, nor related to any of the parties or attorneys to

17   this action, nor financially interested in this action.

18           IN WITNESS WHEREOF, I have set my hand at Tampa,

19   Florida, this 18th day of January 2026.

20

21               /s/ Lori Ann Cecil Vollmer

22               Lori Ann Cecil Vollmer, CSR, RPR
                 United States Court Reporter
23

24

25
```