# EXHIBIT 3

1              IN THE UNITED STATES DISTRICT COURT

2                 MIDDLE DISTRICT OF FLORIDA

3                      TAMPA DIVISION

4

5    POPCORNED PLANET, INC.,           )
                                       )
6            Movant,                    )
                                       )  Civil Docket
7        vs                            )
                                       )  No. 8:25-mc-28-WFJ-LSG
8    BLAKE LIVELY,                     )
                                       )
9            Respondent.               )
     _____    )

10

11                  **STATUS CONFERENCE HEARING**

12

13                    Heard in Courtroom 9B
              Sam M. Gibbons United States Courthouse
14                   801 North Florida Avenue
                       Tampa, Florida 33602
15                  Friday - October 31, 2025
                   11:00 a.m. - 11:34 a.m.

16

17        <u>BEFORE THE HONORABLE LINDSAY SAXE GRIFFIN</u>

18          <u>UNITED STATES MAGISTRATE JUDGE</u>

19

20              LORI ANN CECIL VOLLMER, CSR, RPR
                 Federal Official Court Reporter
             Sam M. Gibbons United States Courthouse
21           801 North Florida Avenue, Room 1221
                     Tampa, Florida 33602
22           Lori_CecilVollmer@flmd.uscourts.gov
                       (813) 301-5336

23

24   Proceedings transcribed via courtroom digital audio recording
      by a court reporter using computer-assisted transcription.

25

1                          APPEARANCES

2

PRESENT ON BEHALF OF THE MOVANT,
3  POPCORNED PLANET, INC.:

4          MR. JEFFREY LEE GORDON,
           MANEY & GORDON, PA
5          101 East Kennedy Boulevard
           Suite 3170
6          Tampa, Florida 33602-5151
           (813) 221-1366
7          j.gordon@maneygordon.com

8

9  PRESENT ON BEHALF OF THE RESPONDENT,
   BLAKE LIVELY:
10
           MS. MERYL CONANT GOVERNSKI,
11         DUNN ISAACSON RHEE LLP
           401 Ninth Street, N.W.
12         Suite 800
           Washington, DC 20004
13         (202) 240-2900
           mgovernski@dirllp.com
14

15

16

17

18

19

20

21

22

23

24

25

                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION

```
 1                      PROCEEDINGS
 2   (Open court.)
 3   (Court called to order.)
 4              COURTROOM DEPUTY:  This Court calls Case No.
 5   8:25-mc-28-WFJ-LSG, Popcorned Planet, Incorporated versus
 6   Lively.
 7              THE COURT:  All right.  Good morning.
 8              I'll have appearances from counsel, please.
 9              MR. GORDON:  Good morning, your Honor.
10              Jack Gordon on behalf of Popcorned Planet.
11              THE COURT:  Thank you.  Good morning.
12              MS. GOVERNSKI:  Good morning.
13              Meryl Governski, your Honor, on behalf of
14   Ms. Lively.
15              THE COURT:  Great.  Thank you, Ms. Governski.
16              All right.  So we are here as a follow-up to
17   last week's hearing.
18              I think the first item really for discussion,
19   we had talked about the parties having a conference about
20   the scope of the search on the subpoena.
21              So maybe, Ms. Governski, that was an issue that
22   you raised.  So maybe I can start with you.
23              Have -- have you been able to reach an agreement
24   on the scope of the search?
25              MS. GOVERNSKI:  Yes, we have, your Honor.
```

1           On -- last Friday, we provided Mr. Gordon

2    with a list of potential repositories of information,

3    of potential custodians and search terms and then we

4    conferred on that on Wednesday.  And they -- Mr. Gordon

5    confirmed that they agreed to our proposal in full.

6           THE COURT:  Okay.  All right.  Great.

7           MR. GORDAN:  Well, we -- we --

8           THE COURT:  Go ahead, Mr. Gordon.

9           MR. GORDON:  -- we -- we -- we commend defense --

10   we -- we commend Ms. Governski for narrowing the scope

11   and making it much easier by providing her itemized

12   search terms.  So we appreciate the professional courtesy.

13          THE COURT:  Okay.  Well, wonderful.  That's

14   great.

15          So then I guess the next thing is, Mr. Gordon,

16   what -- in terms of the search, have you been able to

17   conduct the search?

18          Do you have an idea of how much was turned up

19   in that search and --

20          MR. GORDON:  I -- I do, Judge.  I can actually

21   talk with specificity.

22          After having --

23          THE COURT:  Great.

24          MR. GORDON:  -- our -- our conferral on

25   Wednesday, based upon the initial information and based

1  upon the reduction in -- I don't want to say reduction

2  in scope, but the specific search terms and identities

3  and the like, I -- I became very optimistic and I really

4  wanted to have it filed before this hearing.  So I

5  apologize for not otherwise being able to do that, but

6  I fully anticipate it will be filed before the end of

7  the weekend.

8           I would suggest to you it's probably 60 to 75

9  percent complete at this point in time.  We have 90- --

10          THE COURT:  Are you talking about the privilege

11  log?  Sorry for inter- --

12          MR. GORDON:  The privilege -- the privilege log,

13  your Honor.

14          THE COURT:  Okay.

15          MR. GORDON:  It's approximately, we think, 98

16  pieces of material are within that privilege log and again

17  we have -- we've created essentially --

18          THE COURT:  You said 98?

19          I'm sorry.  Ninety-eight?

20          MR. GORDON:  Currently 90- -- currently up to

21  90- -- I take that back.  Currently up to 94, your Honor.

22          THE COURT:  Ninety-four.  Okay.

23          MR. GORDON:  I will tell you again it's been a

24  little bit more exhaustive because their -- their requests

25  essentially don't limit what the materials could consist

1    of.  So it could be in a variety of different media,

2    whether they be paper, whether they be picture, whether

3    they be video, whether they be again interview footage,

4    things of that nature.  So it's just taking a longer

5    amount of time than I had otherwise anticipated as a

6    result of that.

7              THE COURT:  Okay.

8              MR. GORDON:  And again, Popcorned Planet, I

9    don't want to plead -- you know, plead deprivation or

10   anything, but they only have a few employees.

11             THE COURT:  Uh-huh.

12             MR. GORDON:  And, you know, they've got to

13   go through a lot of stuff.  So there's only three

14   people at Popcorned Planet getting me through this

15   stuff.

16             THE COURT:  Yes.

17             MR. GORDON:  And then, of course, Dave and

18   I have to go through and properly certify it.  So it's --

19   it's taking a little bit longer than I had anticipated.

20   So I apologize --

21             THE COURT:  Okay.

22             MR. GORDON:  -- to opposing counsel to the

23   extent that I thought I would have it right now.

24             THE COURT:  Okay.  No, that's -- that's great.

25   So I guess it sounds like you anticipate probably having

1  a privilege log filed either today or early next week,

2  is that fair?

3          MR. GORDON:  Yes, your Honor.

4          THE COURT:  Okay.  All right.  Let me ask,

5  Mr. Gordon, were there any items that you returned --

6  that came back in the search that were not privileged

7  that have been able to be produced or anticipate

8  producing?

9          MR. GORDON:  I want to be careful there

10 because I don't want to make arrant -- arrant exposure

11 or disclosures, so to speak.

12          But there -- we're currently doing some research

13 on some -- there are communications initiated by Popcorned

14 Planet to certain individuals who would be considered agents

15 or representatives of the defendants.  The vast majority of

16 those were not responded to.

17          We're currently -- currently researching the

18 extent to -- to what extent the privilege would apply

19 to those materials because there are some individuals

20 that did not respond within the timeframe set forth by

21 Judge Liman before February 18th, but responded thereafter.

22          So it would be our position that those initial

23 initiating communications by Popcorned Planet would become

24 privileged.

25          THE COURT:  Okay.  All right.  Well, I -- I

1  guess when you -- do you anticipate finishing that

2  review, I guess, in the same time you would finish

3  the privilege log?

4          MR. GORDON:  Yes, your Honor.

5          THE COURT:  Okay.

6          MR. GORDON:  Part and parcel of the same work

7  that I'm -- that I had hoped to have been completed by

8  today.

9          THE COURT:  Okay.  All right.  So then I guess

10  what we need to figure out then is -- I mean, I can -- I

11  can set sort of an outside deadline, like, for example,

12  maybe next Wednesday is good for a deadline to file that

13  privilege log.

14          But then, Ms. Governski, you'll need an

15  opportunity to review that and then I guess to the extent

16  that you have issues with the privilege log or that there

17  are again objections or -- or challenges to that privilege

18  log, then we'll have to set a time to did that.

19          So Ms. Governski, let me ask you -- I mean, it

20  sounds like the privilege log would be fairly extensive.

21  At least it's close to 100 items at this point.

22          What kind of time do you need to review that

23  privilege log?

24          And again, I think as an initial matter, if

25  you look at the privilege log and think, hey, I -- we need

1    Popcorned Planet to include some more non-privileged

2    information to help us evaluate the claim, then we could

3    address that sooner.

4            But in terms of sort of how much time you

5    need to review the substance, what -- what are you

6    thinking?

7            MS. GOVERNSKI:  Well, your Honor, my question

8    is whether you are asking to review it and then hop on

9    another call or to review it and prepare something to

10   file.

11           THE COURT:  Well, you know, I don't know that

12   we -- you know, how about -- we could do this.  If you

13   enjoy meeting with me everything Friday, we could have --

14   we could have a deadline of, say, Wednesday for the

15   privilege log and I could just set a status for Friday --

16           MS. GOVERNSKI:  Okay.

17           THE COURT:  -- kind of similar to this one

18   and we could -- if there's -- to the extent there are any

19   issues with just the form of the privilege log in terms

20   of what information is included, we could talk about that

21   and then -- and then we could discuss at that point how

22   much time you need.

23           You know, I was just thinking in terms of an

24   additional filing, I mean, the parties have sort of

25   presented their arguments generally on privilege.  So I

1    guess this filing would probably be just as to the --

2    I'm just -- I'm trying to save -- like, make it as

3    most expeditious and useful as I can.  So would it

4    be -- is it necessary to file something or should we

5    just have more of a hearing where we go through each

6    item or we go through -- or you --

7             MR. GORDON:  To -- to -- to the --

8             THE COURT:  -- maybe you find categories --

9    if there are categories of things in the privilege log

10   that you want to challenge, we can have oral arguments

11   over sort of those broad categories.

12            Well, I -- I guess -- I'm sorry.  I'm thinking

13   out loud.  But backing up, we might actually -- if you

14   file a chall- -- if you -- if you file something explaining

15   which ones you're challenging, then I -- then I think we'll

16   need an in camera review before we have -- right?

17            Wouldn't we need that?  Wouldn't we need some

18   opportunity maybe for further oral argument on this --

19            MR. GORDON:  We -- we --

20            THE COURT:  -- overcoming the privilege?  So...

21            MR. GORDON:  Based upon the case law, we would,

22   your Honor.  And then you'd have to make a determination

23   again as to whether -- what -- whether an in camera review

24   is necessary.

25            MS. GOVERNSKI:  Well, your Honor, also, I mean,

1  I think there is a real question of whether the privilege

2  even attaches.

3          THE COURT:  Yes.

4          MS. GOVERNSKI:  So, you know, we may obviate the

5  need to get into a line-by-line discussion if the privilege

6  doesn't apply at all.

7          So, you know, and it may help your Honor to

8  review the communications -- or to -- to do an in camera

9  review to determine that question.  It's just it's a

10  little bit difficult --

11          THE COURT:  Yep.

12          MS. GOVERNSKI: -- you know, in this posture to

13  know what is the best path forward.

14          THE COURT:  Yes, I think that's right.

15          And I -- I guess my initial instinct, as I

16  explained last week, was that in order to determine whether

17  the privilege applies, I would likely need to -- to see

18  the things that are being claimed as privileged because

19  it could depend on what it -- it depends on whether

20  there's news gathering or what -- what is being done in

21  those communications in the same --

22          MR. GORDON:  For --

23          THE COURT:  -- way as an attorney/client privilege.

24          MR. GORDON:  For --

25          MS. GOVERNSKI:  Exactly.

1        MR. GORDON:  For what -- for what it's worth,

2   your Honor, as an officer of the Court, I'll tell you

3   that what we are endeavoring to do is provide sufficient

4   detail and description within the privilege log that

5   would enable this Court to make a determination as to

6   whether any in camera inspection would be necessary or

7   not.

8        THE COURT:  Okay.

9        MS. GOVERNSKI:  Well, I think --

10       MR. GORDON:  So to that -- so two things.

11  And again, I apologize for interrupting, ladies.

12       To -- to that extent, then I -- I promise I

13  fully appreciate the timeframes within which Ms. Governski

14  is -- is working and we want to try to accommodate that

15  as best as possible.

16       I -- I'm not adverse to the Court's suggestion

17  of a case management conference.  I was looking at my

18  calendar during the course of your -- your -- your verbal

19  thought process, if you will, and I see that I am available

20  on Friday.  I don't know if again if Meryl is as well, but

21  that may be the most expeditious fashion.

22       And then I think given the fact that we were

23  able to make some presentation of an argument last week,

24  I think -- I think the Court has an understanding as to

25  what the parameters of the various positions are.

1          And -- and I think we would be able to make

2   a determination as to whether again either the privilege

3   applies or doesn't apply or whether an in camera

4   investigation or inspection is required based upon what

5   you -- what you look at on Friday.

6          THE COURT:  Okay.

7          MR. GORDON:  Or what we file on Wednesday.

8          THE COURT:  Yeah.

9          All right.  Ms. Governski, you were going to

10  say something.

11         MS. GOVERNSKI:  Oh, I was just going to say

12  I think your Friday status conference makes a lot of

13  sense and then we can decide --

14         THE COURT:  Okay.

15         MS. GOVERNSKI: -- if we -- if -- if, you know,

16  we need further briefing, if you can decide on the -- on

17  the briefing itself or if we need further argument on any

18  of the specific components.

19         Your Honor, I do have two substantive points

20  to bring up, but I can -- I can wait until you're ready

21  for that.

22         THE COURT:  And that's as to the -- the

23  privilege?

24         MS. GOVERNSKI:  Yeah.  One is as to Mr. Gordon's

25  reference to February 18th.

1          THE COURT:  Oh, yes.

2          MS. GOVERNSKI:  Do you want me to proceed on

3    that?

4          THE COURT:  Oh, yes.  Continue.  Yeah.  Go

5    ahead.

6          MS. GOVERNSKI:  So, you know, we have not received

7    any objections from Mr. Gordon to the subpoena itself and we

8    also have not received any objections to the -- to the date

9    range.

10         The -- Judge Liman, in SDNY, did rule an outside

11   date of February 18th based on burden to the Wayfarer

12   parties to review documents after that time.

13         We would proffer that it's an open question

14   whether February 18th should apply to this subpoena as

15   well because it's a question of undue burden and we

16   don't think, based on the number of communications that

17   they've said exist up to that date, that there would

18   necessarily be the same undue burden after February 18th.

19         So I just -- you know, and -- and at the last

20   hearing, Mr. Gordon said he didn't disagree with the

21   scope of the subpoena, including a request that specifically

22   asked for materials in June of 2025.

23         So I just -- I -- I don't think that that's a

24   valid objection and I would suggest that Mr. Gordon include

25   on the privilege log responsive materials past February

1  18th.

2          MR. GORDON:  Well, again, firstly, that's

3  going to take forever if that were the -- if that were

4  proper, but I would suggest that under no uncertain

5  terms that that would be legally improper pursuant to

6  Judge Liman's rulings.

7          I have Document 711 from that New York case

8  in front of me dated August 27th and 25th in which they

9  reference Docket No. 646 at Lines 6 through 9.  And the

10  Wayfarer parties respond that if it's permissible, the

11  cutoff dates should be February 18, 2025.

12          And -- and that's the -- those are the

13  guidelines and the parameters that have already been

14  determined because the information that's being sought

15  in this subpoena is a function of what's relevant to

16  that and for -- and the requested information is for

17  purposes of prosecuting or defending that case in New

18  York.  So to suggest otherwise, I -- I would again

19  respectfully advise the Court that I -- I think that's

20  improper.

21          THE COURT:  Okay.  Well, let me -- I'm going

22  to -- I'm going to take that issue under advisement.

23          Mr. Gordon, I would just ask that -- and so

24  your search -- your search hasn't -- has the scope of

25  your search been limited to that February --

1      MR. GORDON:  No, and I'll just --

2      THE COURT:  -- date or have you searched broader

3  than that?

4      MR. GORDON:  I have searched broader than that

5  and that's part of the reason I'm not done yet.  There --

6  again, there's certainly materials that I thought might

7  have been responsive that may not necessarily have been

8  privileged or I think are privileged.

9      But I have determined again that those dates --

10  those are materials that were generated or that reflect

11  communications weeks after February 18, 2025, your Honor.

12      THE COURT:  Okay.  Well, as long as I guess --

13  as long as, Mr. -- Mr. Gordon, that the privilege log that

14  you're compiling is going to include -- I think Ms. Governski

15  is right.  I think -- well, if it's privileged and it's

16  after that February date, I'd ask that you include it in

17  your privilege log.  If it's not privileged then -- then

18  hold it.  Then --

19      MR. GORDON:  Then -- then -- then I --

20      THE COURT:  -- I think you should hold it.

21      MR. GORDON:  -- then I think we're going to have

22  a real problem then, Judge, in terms of being able to get

23  the information prior to Wednesday.

24      THE COURT:  Okay.  So what's the --

25      MR. GORDON:  We're talking --

1           THE COURT:  -- what's the --

2           MR. GORDON:  -- sub- -- we're talking substantial

3    materials or at least that we have to comb through and those

4    are not things that can be combed through by virtue of a

5    computer search term.  They're --

6           THE COURT:  Okay.

7           MR. GORDON:  It's information that's contained

8    in a different media and a different format.

9           THE COURT:  Okay.

10          MS. GOVERNSKI:  Your Honor, if -- if -- to the

11   ex- -- I'm sorry.

12          May I --

13          THE COURT:  Go ahead.

14          MS. GOVERNSKI:  -- respond to that?

15          THE COURT:  Yes.

16          MS. GOVERNSKI:  It may be that Mr. Gordon is

17   referring to video that Popcorned Planet has compiled

18   because he's making a documentary on the subject.

19          I would -- I think we could probably offer a

20   compromise where the initial privilege log does not log

21   all of the video content materials and rather just the --

22   you know, more of like the communications in the first

23   instance so we can see what we're dealing with as

24   opposed to logging -- going through and logging all of

25   the documentary evidence.

1    I would reserve the right to come back and
2  seek that, but I think in the interest of time, we
3  could probably reach some sort of compromise on that.
4    THE COURT:  Mr. Gordon, does that -- does
5  that help?
6    MR. GORDON:  Respectfully, I don't think it
7  does, Judge, because we're talking about -- there were
8  substantial interviews that were conducted.
9    Again, I -- I want to be careful here because
10  I don't want to make arrant disclosures, but there --
11  there's substantial materials as part of that documentary --
12  that are part of that documentary, but that are well beyond
13  the cutoff date.  I'm not --
14    MS. GOVERNSKI:  Your Honor, you know, essentially
15  Mr. Gordon has confirmed that those materials would be
16  responsive and I guess he is questioning the relevance of
17  them to the complaint.
18    The complaint expressly alleges an ongoing
19  campaign of retaliation and I would again refer the Court
20  and Mr. Gordon to the actual opinion that the Court entered
21  when it was considering a cutoff date and that it was not
22  really focused on a relevant inquiry, but rather on an
23  undue burden inquiry and I don't think there's anything
24  before the Court to properly make that determination here.
25    MR. GORDON:  Well, I --

 1        MS. GOVERNSKI:  And he admits he's in regular

 2   contact with agents for the defendants.  That feels to me

 3   like squarely relevant and responsive.

 4        MR. GORDON:  I would -- I would respectfully

 5   suggest, Judge, that that's directly con- -- my understanding

 6   is that's directly contrary to what the Court ruled.  The

 7   Court has specifically indicated that information beyond

 8   that date is not relevant.

 9        THE COURT:  And what's the document number of

10   that ruling and that --

11        MR. GORDON:  I'll give you a couple, Judge.

12   It's -- it's referenced at least -- the two that I pulled

13   is Docket No. 711, seven-one-one.  I'll reference Page 11

14   of that document.  It was filed on August 27, 2025.  I

15   apologize.  Page 11 of 16 is what it was.

16        And if the Court could look at the second

17   paragraph of that, it also references or incorporates by

18   reference Docket No. 646 at Pages 6 through 9.

19        THE COURT:  All right.

20        MS. GOVERNSKI:  Your Honor, let me just --

21   if -- if you could just give me one quick moment, I just

22   want to make sure that there's not another part of that

23   opinion, that is.

24        MR. GORDON:  That's --

25        MS. GOVERNSKI:  I know 711 is the one I'm just

1    looking at the Court's reasoning.

2            MR. GORDON:  Perhaps this may -- again, I

3    don't want to interrupt Meryl's thought process, but

4    the Court expressly stated that moreover the further

5    in time the documents are from the allegations in the

6    complaint, the more likely they are to pertain to this

7    litigation itself, not to the allegation as set forth

8    by Ms. Lively in her -- in her complaint.

9            MS. GOVERNSKI:  Well, what -- what's the exact --

10           MR. GORDON:  That -- that's --

11           MS. GOVERNSKI:  Mr. Gordon, what page --

12           MR. GORDON:   -- that's when the Court made the

13   determin- -- I'm sorry.  That's where --

14           THE COURT:  And what page are you reading from?

15           MR. GORDON:  Page -- Page 11 of 16, your Honor,

16   in Document 711.

17           MS. GOVERNSKI:  Yeah.  Okay.

18           MR. GORDON:  The relevance diminishes over time

19   when there's greater distance from the underlying allegations

20   in the complaint.

21           MS. GOVERNSKI:  Right.  So --

22           MR. GORDON:  Each of the -- each of the Wayfarer

23   parties is accordingly ordered to provide responses to the

24   enumerated request for production through February 18, 2025,

25   on Page 12.

1          MS. GOVERNSKI:  Well, it says also given the

2     likely relevance of these materials decreases over time,

3     the proportionality and tailoring of Lively's requests

4     do as well.  Requiring the Wayfarer parties to produce

5     documents for the last nine months would not only be

6     burdensome, but likely sweep in extraneous materials

7     outside the four allegations in the suit.

8          I don't think you can divorce the relevance

9     analysis there from the unburden analysis there.  They

10    didn't say -- he didn't rule that they were not relevant.

11    He ruled that relevancy decreases and that's a consideration

12    when you're looking at also the undue burden.

13          When you have seven parties with undeniably a lot

14    more responsive materials, that's a totally different burden

15    and undue burden analysis than here.

16          So, I mean, you know, I just -- I think that

17    this is not fully briefed and fully decided and I think

18    given that they're going to assert privileges on everything

19    and given that they have not raised any objections and

20    did not raise this objection when the Court asked if he

21    had any issues with the scope, I think he should log them

22    on a privilege log.  If the privilege applies, then they

23    don't have to produce them.

24          And it seems to me, even based on what Mr. Gordon

25    just said, the issue is these interviews, which are videos.

1    So if you just, in the first instance, don't log the

2    videos, I just -- I can't image how burdensome this is.

3            And furthermore, the fact even that he's

4    talking about how burdensome this would be for Popcorned

5    Planet means there must be a significant amount of

6    communication with the Wayfarer defendants and with their

7    agents, which, in my -- which I would respectfully suggest

8    to the Court indicates that these are directly relevant

9    communications.

10           These are a content creator having direct

11   communications with the defendants or their agents.  It's

12   hard to imagine anything more relevant than that.

13           MR. GORDON:  More relevant to this litigation,

14   which is expressly outside the scope of what's permitted.

15           MS. GOVERNSKI:  It's not expressly outside

16   the scope, Mr. Gordon.  We specifically talk about

17   ongoing harm of retaliation --

18           THE COURT:  Yeah.  Well --

19           MS. GOVERNSKI:  -- up to the present of when

20   you file.

21           THE COURT:  Well, and I -- I -- let me -- I'm

22   not certain to the -- what extent I am controlled by that

23   order either because this is a third party subpoena and

24   in my view, I think it's -- it is pertinent what the judge

25   in New York found, but I think here, I -- nobody has --

1    I've certainly not seen the argument that this particular

2    ruling as to relevance and undue burden as to the Wayfarer

3    defendants should automatically apply in this instance.

4              And, you know, I do think, Mr. Gordon, we

5    did -- you're kind of backtracking a little bit because

6    we covered this ground last Friday when I inquired about

7    whether there were any objections to the scope of the

8    information sought in the subpoena.

9              What I'd like to do is we're going to proceed

10   as -- as planned.  Mr. Gordon, if you find -- and I think

11   as -- as to what Ms. Governski said, if there is video

12   content material beyond the February deadline, do not log

13   that in your privilege log, but if there are communications

14   outside of the videos or -- or other documents again

15   outside the video content, then please do endeavor to

16   include those in your privilege log if -- if Popcorned

17   Planet is claiming privilege.

18             If you find that -- that you are needing more

19   time to do that than Wednesday, then please -- please

20   file a request and we'll -- we'll give you more time to

21   do that.  But I -- I do think that that -- that should

22   be done.  I'm -- and again, I'm going to look at this a

23   little bit closer because it wasn't -- it wasn't raised

24   last -- last week and I don't think it was -- I know

25   there was a burden argument raised by Popcorned Planet,

 1  but I don't know that this particular one was.  So I

 2  need more time to look at it before I can decide the

 3  issue.

 4          But in the meantime I would -- I would like

 5  you, Mr. Gordon, to have your client log any communications

 6  outside of the videos beyond February and let us know

 7  if you need more time.

 8          MR. GORDON:  I'll -- I'll advise the Court now

 9  that I anticipate having to make that request.  We'll --

10  we'll --

11          THE COURT:  Okay.

12          MR. GORDON:  I promise -- and we'll exercise

13  good faith effort, but I --

14          THE COURT:  Okay.  Well --

15          MR. GORDON:  -- don't suspect that will happen.

16          THE COURT:  -- just confer with Ms. Governski

17  about the time that you need and, you know, I only need,

18  like, a one pager or something --

19          MR. GORDON:  Okay.

20          THE COURT:  -- on the record, but not -- not

21  much.  So let me know what you need and we'll --  we'll

22  get that taken care of.

23          All right.  So with that, I -- I think,

24  Ms. Governski, was there -- was there another substantive

25  item you wanted to raise?

```
 1            MS. GOVERNSKI:  There was.  It has to do
 2   with the request for judicial notice.  So I -- I will
 3   hold that until we're done with the privilege conversation.
 4            THE COURT:  Yeah, yeah.  Let's do that.  Let's
 5   do that.
 6            Okay.  Well, thank you.  Mr. Gordon, was there
 7   any -- I'm sorry.
 8            Go ahead, Ms. Governski.
 9            MS. GOVERNSKI:  But I would like to address it
10   today, your Honor, I meant.
11            THE COURT:  Oh, okay.
12            MS. GOVERNSKI:  Just very quickly.
13            THE COURT:  Sure.  Well, no, I do think -- I
14   think we are finished as far as the privilege log is
15   concerned.  I -- I think we're finished with that.
16            MR. GORDON:  We understand the ruling on this
17   side, your Honor.
18            THE COURT:  Yeah.  Okay.  Thank you.
19            Go ahead, Ms. Governski.
20            MS. GOVERNSKI:  My only point about the -- you
21   know, I'm trying to avoid filing more on the docket in
22   terms of opposing the judicial -- request for judicial
23   notice.  So I thought it might -- if -- if we could take
24   five minutes to talk about it now, it might obviate the
25   need for me to file something --
```

1        THE COURT:  Sure.

2        MS. GOVERNSKI: -- if that's okay with your

3   Honor.

4        THE COURT:  Yes, that is.  Okay.

5     (Inaudible verbiage in the background with unknown

6        individuals.)

7        THE COURT:  I'm sorry.  Mr. Gordon, did you have

8   something that -- to raise?

9        MR. GORDON:  Yeah, Judge.  My concern is that

10  again, I'm at a serious disadvantage here because the

11  vast majority of materials are sealed.  I don't know how

12  intelligently I can talk about documents.

13       MS. GOVERNSKI:  My goal --

14       THE COURT:  Well, I she --

15       MS. GOVERNSKI:  -- is not to talk about the

16  specific documents.

17       THE COURT:  No.  I think -- I think Ms. Governski

18  is talking about Document 16 that you filed last week and

19  so I -- I -- I anticipate that Ms. Governski's discussion

20  will be surrounding those documents, is that right?

21       MS. GOVERNSKI:  That's right, the specific

22  documents that they filed and asked for judicial notice

23  of.

24       THE COURT:  Okay.  Yeah, yeah.  Go ahead.

25       MS. GOVERNSKI:  Yeah.  So, you know, there's a

1  number -- fundamentally, we don't have an issue with the

2  Court taking judicial notice of those specific documents.

3          What we do have an issue with is the attempt

4  to essentially amend or supplement the briefing by

5  discussing why Popcorned Planet views these documents

6  as relevant.

7          The -- the back half, I think Pages 5 to 7

8  of their motion, discusses why they think that these

9  are relevant, which is outside the bounds, we think,

10 of proper judicial notice and also is, you know, contrary

11 to the local rules because it's essentially an attempt

12 to reply.

13          And given the conversation last time about,

14 well, I should have filed a motion to strike, I just

15 wanted to bring it up because if the Court is inclined

16 to just take judicial notice of these filings, that's

17 fine.  But to the extent that the Court would consider

18 the substantive points as argument with respect to the

19 briefing, then we would go ahead and file an opposition

20 and potentially a cross-motion.

21          We also would say, you know, as your Honor

22 saw, we were surprised by the filing.  We were not

23 conferred with in advance of the filing, which is contrary

24 to the local rules as well.

25          And so I just bring this up since we happen to

1   be on the call really in the hope to obviate more filings

2   with the Court depending on what your Honor is going to do

3   with the settlement.

4        UNIDENTIFIED MALE VOICE:  Take notice of something

5   that's in the public record.

6        THE COURT:  Mr. Gordon, do you have a response?

7        MR. GORDON:  Yeah, yeah.

8        Firstly, we don't have to confer for -- on a --

9   on a request for judicial notice pursuant to local rules.

10        Number two, again, the -- the -- the purpose of

11   filing those documents asking the Court to take a look at

12   them was that they're -- at the time that the information

13   was provided in New York, Ms. Governski's client had the

14   opportunity to file additional motions to compel or to

15   otherwise file a motion suggesting that it was insufficiently

16   responsive.  She failed to do that as it related to

17   Popcorned Planet.

18        Certainly, they did it with respect to Snapchat

19   GT, I think it's called.  Here's what I say about the

20   serious disadvantages because thereafter, there was a

21   motion for spoilation filed apparently going to this

22   very issue.  The problem is that's also sealed.

23        So I -- I -- I -- I can't speak intelligently

24   about what the position is about the best way for me to

25   respond to what's been suggested by Ms. Lively's counsel.

1          MS. GOVERNSKI:  Well --

2          THE COURT:  Go ahead, Ms. Governski.

3          MS. GOVERNSKI:  Well, I would respond to that

4   twofold.

5          A significant amount of the judicial -- the

6   documents that he re- -- well, he actually just proved

7   my point, which is he's trying to use these judicial

8   arguments to supplement his exhaustion argument.

9          So to the extent that that's what Mr. Gordon

10  wants to do, he failed to seek leave to do that.  If

11  your Honor is inclined, then I would file our own reply

12  that explains exactly what he just said, which is not

13  part of the judicial notice motion, which is we did

14  file a motion for spoilation.

15         While parts of that are redacted, other parts

16  are not, which indicates that there has been spoilation

17  of Signal evidence and that the defendants have confirmed

18  that they communicated with Signal with content providers.

19         So additionally, Mr. Gordon has just admitted

20  that he doesn't have the full picture.  So for him to

21  submit random pieces of information from a docket as an

22  intent to bolster an exhaustion argument, is -- it puts

23  us in a position where we need to respond so that the

24  full information is out there, including our various

25  efforts at exhaustion.

1          So this all goes back to the same point,

2   which is if the Court wants to take judicial notice of

3   those documents we don't have -- we don't have issues

4   with that.  In fact, we sought judicial notice in our

5   opening motion, including of some of the documents he

6   requested.

7          But if the Court is going to consider and

8   potentially rely on the argument he's trying to make,

9   including here today, that these documents somehow

10  demonstrate a lack of exhaustion, we would seek leave

11  to file an opposition and potentially a cross-motion

12  on why that is not true.

13         THE COURT:  Mr. Gordon, I -- I tend to agree

14  with Ms. Governski that although just requesting judicial

15  notice is -- is one thing and certainly something you

16  do not have to confer on to request judicial notice of

17  another court proceeding, but there is -- there is more

18  than just that in Document 16.

19         You know, there is a relevance argument that

20  I think is -- it's outside of the briefs and Local Rule

21  3.01 does require that if you're going to file something

22  as -- other than, for example, a notice of supplemental

23  authority, if you're going to file something that's going

24  to supplement your brief, typically that's a reply or a

25  surreply.  You need to ask relief to do that.

1            You know, I -- I -- I'll just be frank with

2   you, knowing that there was another case and having

3   it be presented by Ms. Lively here, you know, I'm more

4   likely to take judicial notice of the fact that that's

5   there and -- but I -- I think if you're going to --

6   and -- and I will do that and we can take judicial

7   notice of -- of these particular things, but I think

8   considering argument outside of the briefs is problematic

9   because either -- I mean, either -- as Ms. Governski

10  said, either we're in the position where I need to

11  permit Ms. Lively to respond substantively to this or

12  we need to not consider it.

13            And, you know, I'm going to give -- I'm going

14  to give the parties an opportunity -- we are going to

15  have an opportunity, I think, for some further argument

16  here on the issue once I get more information in the

17  form of the privilege log and potentially an in camera

18  review.

19            And so, you know, Mr. Gordon, you can -- you

20  can make your oral argument about -- about that, but

21  I think as far as it concerns the written briefs, I'm

22  not inclined to consider argument that's made outside

23  of -- outside of the briefs and outside of what's

24  permitted under the local rules.

25            So I hope that's clear.  I -- I am willing to

1  take judicial notice of the -- of these -- these facts

2  that have been presented in terms of the orders and

3  the other attachments to Document 16, but I'm -- I am

4  not going to consider the argument that's raised at

5  least as far as the briefs are concerned.

6          Mr. Gordon and Ms. Governski, you can both

7  provide oral argument when we get there on the impact

8  of these things, but as far as the written record,

9  I'll enter an order to that affect on Document 16.

10          MS. GOVERNSKI:  Thank you, your Honor.

11          THE COURT:  All right.  So anything further,

12  Ms. Governski?

13          MS. GOVERNSKI:  Nothing from me, thank you.

14          THE COURT:  Mr. Gordon, is there anything from

15  Popcorned Planet?

16          MR. GORDON:  No, your Honor.

17          THE COURT:  Anything further?

18          MR. GORDON:  Anything further, no.

19          THE COURT:  Okay.  All right.  So we'll get

20  an endorsed order on the deadline for the privilege log.

21          We'll set up a status for next Friday.

22          And then, as I said, Mr. Gordon, if you need

23  additional time just confer with Ms. Governski and let

24  us know.

25          MR. GORDON:  Thank you, your Honor.

1              While we have you --

2              THE COURT:  Yes.

3              MR. GORDON:  -- the benefit of you on screen,

4   can we coordinate for that time on Friday?

5              THE COURT:  Absolutely.  Yep.

6              This Friday, I'm -- I'm good pretty much any

7   time up until 11:00 Friday morning or after about -- at

8   about 1:30 Friday.  So I can do afternoon or morning.

9              MR. GORDON:  I'm a little -- I would be double

10  booked in the morning.  So 1:30 is better for Popcorned

11  Planet.

12             MS. GOVERNSKI:  1:30 works for me.

13             THE COURT:  Okay.  All right.  Then why don't

14  we plan -- we'll get it -- we'll get that entered on the

15  docket for --

16             MR. GORDON:  November 3rd?

17             MS. GOVERNSKI:  November 7th.

18             MR. GORDON:  I'm sorry.

19             THE COURT:  November 7th, yeah.  November 7th

20  at 1:30.

21             MR. GORDON:  Ahh, a wrong date.  I apologize,

22  Judge.

23             THE COURT:  Okay.  No, go ahead.  All right.

24  I can shift things around.

25             What do you need?

1          MR. GORDON:  The morning of Friday the 7th

2    would be better than 1:30.  I'm schedule for a deposition

3    in the afternoon.

4          THE COURT:  Okay.  What about 9:30 or 10:00?

5          Do either of those times work?

6          MR. GORDON:  10:00 o'clock works great, Judge.

7          THE COURT:  Okay.  Ms. Governski, does that

8    work for you?

9          MS. GOVERNSKI:  It works for me too.

10          THE COURT:  All right.  All right.  So we'll

11    do 10:00 a.m. for a status next Friday.

12          MR. GORDON:  Thank you for your patience, Judge.

13          THE COURT:  Oh, absolutely.  Thank you both.

14          Enjoy your weekend and we will convene next week.

15          MS. GOVERNSKI:  You as well, thank you.

16          MR. GORDON:  Be safe all.

17                (Whereupon, the Court adjourned

18                  at 11:34 a.m.)

19                      --oo0oo--

20

21

22

23

24

25

                      UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
                            TAMPA DIVISION

1   UNITED STATES DISTRICT COURT   )

2                                  )

3   MIDDLE DISTRICT OF FLORIDA     )

4

5                   REPORTER TRANSCRIPT CERTIFICATE

6

7            I, LORI ANN CECIL VOLLMER, Official Court Reporter

8   for the United States District Court, Middle District of

9   Florida, certify pursuant to Section 753, Title 28, United

10  States Code, that the foregoing transcript is a true and

11  correct transcription of the stenographic notes taken by the

12  undersigned in the above-entitled matter, Pages 1 through 34,

13  and that the transcript page format is in conformance with

14  the regulations of the Judicial Conference of the United States

15  of America.  I further certify that I am not attorney for, nor

16  employed by, nor related to any of the parties or attorneys to

17  this action, nor financially interested in this action.

18           IN WITNESS WHEREOF, I have set my hand at Tampa,

19  Florida, this 18th day of January 2026.

20

21              /s/ Lori Ann Cecil Vollmer

22              Lori Ann Cecil Vollmer, CSR, RPR
                United States Court Reporter

23

24

25

                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION