# EXHIBIT 4

1              IN THE UNITED STATES DISTRICT COURT

2               MIDDLE DISTRICT OF FLORIDA

3                  TAMPA DIVISION

4

5  POPCORNED PLANET, INC.,       )

6          Movant,          )
                           )  Civil Docket

7     vs                 )
                           )  No. 8:25-mc-28-WFJ-LSG

8  BLAKE LIVELY,           )

9         Respondent.     )
    _____ )

10

11

                 **STATUS CONFERENCE HEARING**

12

13               Heard in Courtroom 9B
        Sam M. Gibbons United States Courthouse
14            801 North Florida Avenue
              Tampa, Florida 33602
15          Friday - November 7, 2025
             9:59 a.m. - 10:45 a.m.

16

17     BEFORE THE HONORABLE LINDSAY SAXE GRIFFIN

18       UNITED STATES MAGISTRATE JUDGE

19

20       LORI ANN CECIL VOLLMER, CSR, RPR
          Federal Official Court Reporter
      Sam M. Gibbons United States Courthouse
21     801 North Florida Avenue, Room 1221
           Tampa, Florida 33602
22    Lori_CecilVollmer@flmd.uscourts.gov
             (813) 301-5336

23

24  Proceedings transcribed via courtroom digital audio recording
   by a court reporter using computer-assisted transcription.

25

1                                   APPEARANCES

2

PRESENT ON BEHALF OF THE MOVANT,
3   POPCORNED PLANET, INC.:

4           MR. JEFFREY LEE GORDON,
            MANEY & GORDON, PA
5           101 East Kennedy Boulevard
            Suite 3170
6           Tampa, Florida 33602-5151
            (813) 221-1366
7           j.gordon@maneygordon.com

8

9   PRESENT ON BEHALF OF THE RESPONDENT,
    BLAKE LIVELY:
10
            MS. MERYL CONANT GOVERNSKI,
11          DUNN ISAACSON RHEE LLP
            401 Ninth Street, N.W.
12          Suite 800
            Washington, DC 20004
13          (202) 240-2900
            mgovernski@dirllp.com
14

15

16

17

18

19

20

21

22

23

24

25

                        UNITED STATES DISTRICT COURT
                         MIDDLE DISTRICT OF FLORIDA
                              TAMPA DIVISION

```
 1                         PROCEEDINGS
 2   (Open court.)
 3   (Court called to order.)
 4              COURTROOM DEPUTY:  In the matter of *Popcorned*
 5   *Planet, Incorporated versus Blake Lively*, *Case No. 8:25-mc-28.*
 6              THE COURT:  Thank you.
 7              It looks like we might still be waiting on
 8   Mr. Gordon.
 9              COURTROOM DEPUTY:  I think that's right.
10              THE COURT:  All right.  Okay.  We'll just give
11   it a minute then.
12              Good morning, Ms. Governski.
13              MS. GOVERNSKI:  Good morning, Judge.
14              How are you?
15              THE COURT:  I'm doing well.
16              How are you?
17              MS. GOVERNSKI:  I'm good.  Thank you.  It's Friday.
18              THE COURT:  Yes.
19         (Brief pause.)
20              THE COURT:  Good morning, Mr. Gordon.
21              MR. GORDON:  Your Honor, counsel, good morning.
22              MS. GOVERNSKI:  Good morning.
23              THE COURT:  All right.  So we're here for a status
24   in this matter.
25              Just to recap last Friday, we talked about having
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1   a privilege log produced by Popcorned Planet and we

2   discussed the potential for an extension of time necessary

3   to do that.

4              Mr. Gordon, I'd like to start with you.  I --

5   I have some concerns about what was filed and I don't

6   know -- let me just begin with this, sir.

7              When we talked on last Friday, you said that

8   there were 94 items in a privilege log and that it was

9   60 to 75 percent complete.

10             What was filed on Wednesday, I think, has, what,

11  19 items listed.

12             What's going on?

13             MR. GORDON:  It's really a function of the

14  professional courtesy extended by Ms. Governski during

15  the course of our conferral on Monday.

16             In an effort to try to garner information earlier,

17  there were certain parameters that were agreed to and it

18  enabled us to provide disclosures and again not -- not have

19  as much information on the -- on the privilege log.

20             THE COURT:  Okay.  So you were able to produce

21  some non-privileged information to Ms. Lively?

22             Okay.  So that's what reduced the size of the

23  privilege log?

24             MR. GORDON:  Correct.

25             And again, placed upon a reduction in the

1  parameters of what was being requested, we were able

2  to significantly reduce the amount of information.

3          THE COURT:  Okay.  All right.  And I

4  apologize because there was no reference to a conference

5  between counsel and your motion.

6          MR. GORDON:  Yeah.  And I apologize for that.

7          Pursuant to the rules, Judge, I know we have

8  72 hours, three days, and we were working fairly late.

9  I know that we tried to get -- I think Mr. Mitchell tried

10 to get ahold of Ms. Governski, I want to say, night before

11 last late, but in all fairness, it was late.  In all

12 fairness, we all have lives and she has a right to sleep.

13         THE COURT:  Understood.  So --

14         MS. GOVERNSKI:  I didn't get a message.  Sorry.

15         THE COURT:  Yeah.  Understood.

16         It's -- it -- it is just something that needs

17 to be done before the motion is filed, but I -- I -- I

18 understand now that you have -- that you have conferred

19 at least on the privilege log at least on Monday, it sounds

20 like.  So that's the reason why we have a reduction in

21 the size of the log.

22         Mr. Gordon, can you -- and maybe the parties

23 have already talked about this, too, but Mr. Signore's

24 declaration gave me a little bit of pause because I --

25 I wanted to just clarify who is doing the review and

1    the compilation of the privilege log in this case?

2              MR. GORDON:  That is myself and Mr. Mitchell.

3              And, of course, we are doing that pursuant

4    to the information that we are garnering from Mr. Signore

5    as well as a gal by the name of Michelle and a gal by

6    the name of Kim, his employees.

7              And there -- again, there are some fairly

8    voluminous materials that they've been providing to us.

9              THE COURT:  Okay.  And so they are just

10   doing the gathering of this material --

11             MR. GORDON:  Correct, correct.

12             THE COURT:  -- and you are the ones --

13             MR. GORDON:  We -- we -- we are doing the

14   reviewing pursuant to the -- to the legal requirements.

15             THE COURT:  Okay.  And you are compiling the

16   privilege log?

17             MR. GORDON:  Correct.

18             THE COURT:  Okay.  All right.  And let me --

19   let me just ask so when we initially spoke on October

20   22nd, you mentioned that there had been -- there were

21   no contracts, no verbal agreements, no emails, no email

22   communications suggesting an agreement and that it was --

23   what was at issue here was primarily communications --

24   email communications.

25             Is that accurate?

1          MR. GORDON:  I would say yes, your Honor.

2          THE COURT:  Okay.  Can you let -- can you

3    tell me -- and I don't need to know the entire scope.

4    I know that you all discussed the scope of review after

5    that date, but at that point what -- like, what scope

6    of information had you reviewed?

7          I mean, are we -- can you give me just a

8    timeframe of what you were looking at?

9          MR. GORDON:  Initially, we were looking at

10   information through February 18th pursuant to this Court's

11   directives.  We --

12          THE COURT:  So --

13          MR. GORDON:  -- again extended our search beyond

14   that date thereafter.

15          THE COURT:  Okay.  So you were looking -- so in

16   2024 through February of 2025?

17          MR. GORDON:  Correct.

18          And -- and I will suggest to the Court that

19   while the -- while the number of entries on the privilege

20   log has been reduced, the actual number of documents

21   within the privilege log has actually increased from the

22   90 that I had suggested.  I think it's around 118 right

23   now.  So 100 -- I'm sorry -- 140 pages.

24          THE COURT:  Okay.  Let me back up a second.

25          So the privilege log has19 items.  So I'm

 1   distinguishing between items and pages.

 2           When you said -- what we just discussed

 3   that -- last Friday, you said there were 94 items,

 4   but through a conference with Ms. Lively -- Ms. Lively's

 5   counsel, you were able to produce some of those items

 6   and so that's why we only have 19?  So the balance of --

 7   of that 94 was produced?

 8           MR. GORDON:  No, your Honor.

 9           THE COURT:  So you -- you have 19 on the

10   privilege log and the other --

11           MR. GORDON:  And -- and -- and -- and perhaps

12   I misspoke or otherwise didn't properly articulate the

13   full nature of what it is that we were reviewing and

14   going through.

15           The -- the entries within the privilege log

16   are -- are -- entries, but within each of those entries,

17   there may be multiple documents.  For example, threads

18   of emails back and forth.

19           THE COURT:  Yeah.  Understood.

20           MR. GORDON:  So communications that occurred

21   the February 18th deadline.

22           THE COURT:  Okay.  Let me just back up because

23   I want to make sure I understand what is included in

24   this privilege log.

25           What -- it's -- it's -- it's 19 items.  It's

1  how many pages?

2          MR. GORDON:  I think 142 doc- -- 142 pages,

3  your Honor.

4          THE COURT:  Okay.  Nineteen items, 142 pages.

5          Okay.  And that -- those are items -- those

6  19 items come from your search of 2024 through February

7  of 2025?

8          MR. GORDON:  Yes, as it relates to crew members.

9          We're -- we -- we -- we still have additional

10  documentation and information to review about communications

11  that occurred after February 18th with individuals or

12  entities other than the party defendants.

13          THE COURT:  Okay.  So just -- just going back

14  to this privilege log, that ends -- that ends -- the time

15  period of that ends February 2025?  Like --

16          MR. GORDON:  No, your Honor.

17          As it relates to the party defendants, it extends

18  all the way through.

19          THE COURT:  Okay.  All right.  So you've -- all

20  right.  So what is it you are -- what is it remaining to

21  do?

22          What -- what do you have left to do?

23          MR. GORDON:  There is -- again, I've got to

24  be careful here because I don't want to otherwise make

25  improper disclosures, but I'll -- I'll share with the

1    Court, based upon what we're reviewing, there is a --

2    there is a methodology that is employed by Popcorned

3    Planet and I imagine the vast majority of -- of people

4    who are gathering information for the -- with the

5    intent to disseminate.  It's called the news gathering

6    process.

7              As this Court knows, and as we had discussed

8    during the course of the initial hearing, I referenced

9    the *Von Bulo* case.

10             So there are shotgun communications sent to

11   crew members, people who otherwise may have been on the

12   set, ancillary individuals who may otherwise be affiliated

13   with independent contractors who were on the set of

14   It Ends With Us.

15             Again, we're trying to be as comprehensive as

16   we possibly can.  The vast majority of these commun- --

17   outgoing communications were not otherwise responded to.

18   Nevertheless, they are part of the news gathering process

19   and it's incumbent upon us to properly log them.

20             Again, I -- I can advise the Court -- and

21   again, I'm walking a thin line here, Judge.  It's a little

22   bit outside of my wheelhouse, but in an abundance of

23   caution, we have logged information.  But rather than

24   trying to avoid an in camera inspection, we are inviting

25   the Court -- and we have no objection to an in camera

1  inspection of this -- of all of these documents and all

2  of this information.

3           Again, this is based upon the fact that we

4  believe it is truly innocuous and not relevant to the --

5  to the underlying proceedings that -- that have been

6  asserted by -- by Ms. Lively.

7           THE COURT:  Okay.  So it sounds as if the

8  remaining document review that you have to do is with

9  sent emails?

10          MR. GORDON:  Sent emails, sent texts.  So

11 basically, invitations to communicate or invitations to --

12 to interview.

13          Ms. Governski was -- again in a -- in a very

14 high degree of professional courtesy -- was good enough

15 to not seek out video footage because again, there's an --

16 there's also a -- for lack of a better term -- a -- a

17 parallel documentary being prepared by Popcorned Planet,

18 by my client.

19          Again, not as it relates to his -- his reporting

20 for Popcorned Planet, but for purposes of a documentary in

21 which he is intending to produce and ultimately release.

22          THE COURT:  Okay.

23          MR. GORDON:  But by virtue of the fact that some

24 of those interviews would be responsive to the subpoena,

25 we've got to go through all of this stuff.

1      THE COURT:  Okay.  But we did have the

2  stipulation that we were not going to be including

3  video in that.  So it's just email communications and --

4      MR. GORDON:  Primarily email communications

5  as well as texts, but as well as telephone communications.

6  Again, no video footage, as I understand it, we have

7  agreed is, Jack, you don't have to worry about that and

8  go through, you know, hours and hours and hours of video

9  footage.

10      However, in the course of coordinating for

11  some of these interviews and for travel to these various

12  locations to interview these personnel, as I understand

13  it, that's still on the table and I still have an

14  obligation to review those materials and otherwise

15  either disclose them or place them on a privilege log.

16  That's what requires the additional time, your Honor.

17      THE COURT:  Okay.  And is that all stuff that's

18  post-February 2025?

19      MR. GORDON:  Yes, your Honor.

20      THE COURT:  Okay.

21      MR. GORDON:  Just for crew.  For crew, correct.

22  Sorry.  For crew and ancillary individuals that may have

23  been on set.  All defendants, all information, all

24  communications, all outreach to defendants have been

25  either properly logged or properly disclosed.

1           THE COURT:  Okay.  What's the volume of what
2   you have produced?
3           MR. GORDON:  It's 142-something pages, I think.
4           THE COURT:  Okay.  I thought that was the --
5           MR. GORDON:  Oh, I -- I apologize.
6           MS. GOVERNSKI:  That is not accurate.
7           THE COURT:  Okay.
8           MR. GORDON:  I -- I'm talk- -- I'm talking about
9   the documents on the privilege log.  I apologize, Judge.
10          THE COURT:  Yeah.
11          MR. GORDON:  Half a -- half a dozen items, half
12  a dozen pages.
13          MS. GOVERNSKI:  Seven single -- seven documents,
14  seven pages, about two minutes before this hearing.
15          THE COURT:  So, Mr. Gordon, when you were talking
16  about 94 items last week, that was 94 pages?
17          MR. GORDON:  Correct.
18          THE COURT:  Okay.
19          MR. GORDON:  And again, Judge, I -- I may be --
20  I may be erring on the side of caution, but pursuant to
21  that *Von Bulow* case, anything that -- any materials that
22  would be generated as part of the news gathering process,
23  that would mean Mr. Signore's methodology in terms of how
24  he reaches out, the emails, although they may not have
25  been responded to, in an abundance of caution, we felt

1    it was proper to log -- proper to log them.

2          And again, we invite the in camera inspection.

3    I think they're innocuous.  If the Court wants to make --

4    you know, disclose some of the information if they believe

5    the privilege should be overcome by virtue of relevance,

6    compelling need and inability to garner that information

7    from anywhere else, God bless.

8          THE COURT:  Okay.  What -- what has been searched

9    so far in terms of email accounts and other accounts?  Like,

10   what --

11         MR. GORDON:  Again, just -- and I apologize

12   because I may not possess the sufficient technological

13   terminology correctly, but Twitter stuff, TikTok stuff,

14   stuff on Chat GBT, stuff on phone messages, stuff by

15   virtue of text messages, email messages, communications

16   not merely from Andy to individuals, but also from his --

17   his independent contractor Michelle and also from his

18   employee Kim.  It's -- it's been voluminous.

19         And again, I'll represent to the Court that we

20   have spent many, many, many, many, many hours reviewing

21   materials.

22         THE COURT:  Okay.  So let's go --

23         MR. GORDON:  I -- I -- I will -- I will suggest,

24   however, it was made easier by virtue of the fact that

25   Ms. -- Ms. Governski provided us with the parameters and

1    the -- I guess what would be the proper term, receptacles?

2            UNIDENTIFIED MALE VOICE:  Repositories.

3            MR. GORDON:  The repo- -- the repositories of

4    information --

5            THE COURT:  Okay.  Well, can --

6            MR. GORDON:  -- is what she was looking for.

7            THE COURT:  -- you -- can you give me a ballpark?

8            What's the volume of what you've reviewed?

9            MR. GORDON:  Volume in terms of pages or in

10   terms of the amount of hours it's taken to review those --

11   that information?

12           THE COURT:  Well, I don't know if hours is the

13   most accurate assessment.  I think I'd like to know in

14   terms of, you know, we can have pages, we can have file

15   size.  What -- what -- we can have the number of distinct

16   items.

17           MR. GORDON:  Again, I would suggest the answer

18   to that question probably lays within the 142 pages set

19   forth in the privilege log.

20           THE COURT:  Well, Mr. Gordon, ostensibly, you've

21   reviewed things that you haven't found to be responsive

22   to the subpoena and you've reviewed things that -- yeah,

23   I mean, you -- normally when you do these sort of searches,

24   you would have a timeframe and custodian search terms, you

25   gather a bunch of information and then you -- a sub- --

1  some subset of that would be responsive and -- or either

2  producible or responsive and privileged.

3        So I'm trying to understand what's the --

4  what's the universe.  What's the universe of information

5  you've collected, like --

6        MR. GORDON:  The universe is --

7        THE COURT:  -- how big is it?

8        MR. GORDON:  -- it's -- it's large.

9        It includes any telephone calls, any phone logs,

10  any memoranda, any -- any emails, any text messages, any --

11  again, Instant Messages, it -- it's included all of the

12  documentation and information that was set forth in an email

13  that was provided to me by Ms. Governski.

14        THE COURT:  Okay.  And have you -- like, have

15  you gathered all of that and put it in some sort of database

16  or have you gathered all of that and put it in sort of a

17  file?

18        Do you have an idea of what the size of it is?

19        MR. GORDON:  Again, I -- I -- I apologize,

20  Judge.  I don't know how to answer that question in terms

21  of megabytes or in terms of -- in terms of pages.  I just

22  don't have the ability to -- the ability to respond to that.

23  I apologize.

24        THE COURT:  Okay.  Well, I -- I think what I'm --

25  the difficulty I'm having is trying to understand what --

1   what has been done and what remains to be done in terms

2   of the gathering and reviewing.

3           And so what I need to understand is what

4   timeframe have you searched and what custodians and

5   what remains to be done and I think we need to be fairly

6   specific about it.

7           MR. GORDON:  I can be -- this is as specific

8   as can be, Judge.  It -- it is any and all efforts to

9   communicate with individuals or entities other than party

10  defendants and agents of party defendants.

11          I think we would be able to produce and otherwise

12  be responsive as it relates to parties and -- and agents of

13  party defendants throughout the entire course of time.

14          What -- what's missing is the individuals who

15  are not party defendants or agents of the party defendants

16  such as crew members, other individuals who again may or

17  may not have been onset or may have otherwise met or had

18  communications with either crew members or other individuals

19  within the industry.

20          THE COURT:  Okay.  All right.  Well, you have

21  requested an extension of time here.

22          And so, Ms. Governski, what is -- what is the

23  respondent's position on -- on that?

24          MS. GOVERNSKI:  So, your Honor, I think -- I

25  don't have a problem with granting an extension of time.

1  I was not contacted.  There was no message for me.

2  There was no email.  So I, as a professional courtesy,

3  would, of course, extend an extension of time.

4          What I'm very worried about is an extension

5  of time to engage in some professed cumbersome, burdensome

6  mission that is not actually looking for responsive

7  materials.

8          You know, I think it's abundantly clear that

9  they have not engaged in a collection.  They have not

10  collected the emails.  They have not collected the Gmails.

11  They have, it sounds like, told Mr. Signore to go in and

12  search on his phone or search on his email or search on

13  his text messages.

14          The search terms we provided are the terms

15  that we provide similar to the search terms we provide,

16  which require bouillon searches or a professional vendor

17  or a professional collection.  They're not necessarily

18  going to be conducive to just opening your phone and

19  whatever text messages happen to be there.

20          I -- so I don't think there's been a proper

21  collection, which is why they couldn't answer your

22  question about the collection and about the scope.

23          They're just reviewing whatever their client

24  hand them and I think they are artificially constraining

25  it to the communications they sent for responses to

1    their documentary.  That is not the primary or even

2    the only -- definitely not the only thing that the

3    subpoena requests.

4            We know from this very deficient privilege

5    log and the seven documents that they -- that he

6    produced that Mr. Signore is in direct communication

7    with the defendants.  This text message chain that

8    he's listed on his -- this privilege log shows a single

9    text communication with one of the defendants between

10   all the dates of January to June '24.

11           So it's very hard for us to assess an entire

12   text message that's logged through a five-month period,

13   how many communications that is, and the proprietary --

14   the proprietary nature of withholding it.

15           We -- it -- it looks like from this, Mr. Signore

16   has a grand total of one text message and nine emails with

17   these defendants, which does not inspire confidence that

18   this was a full search.

19           And I also don't quite understand -- he said he

20   spent money on a text message extraction software, it --

21   it's just not plausible that if you appropriately search

22   text messages that have been extracted that a single text

23   chain would appear especially given the fact that apparently

24   these agents of his have engaged in extensive reach-out

25   and communication and there are no communications between

1   them or among them.  Those would be responsive.

2          If Ms. Molten is emailing Mr. Signore, spoke

3   with Melissa Nathan today, spoke with -- that would be

4   responsive.  Where is that?

5          So I just -- it's very, very hard to sit here

6   and say, yes, get an extension when I don't have any

7   confidence that they've even done the absolute first

8   step, which is a proper collection or a proper -- let

9   alone a proper search or production.

10          Also, I'm not quite sure what the point

11   of conferrals is if he then -- in they then file a

12   motion that indicates we haven't agreed to anything.

13   We agreed that they did not have to produce

14   communications that went out and that were not

15   unrequited, that were not responded to.

16          And it seems like there's still all these

17   messages -- all of these outbound messages to review.

18   Like, if they're not responded to, we have agreed

19   that he doesn't have to produce them or log them on

20   a privilege log.

21          And it seems like they are intentionally

22   trying to make this difficult.  Like, hiring a vendor

23   to extract emails and do a quick search in the tos or

24   the froms or the phone numbers would be significantly

25   less time consuming than what they're engaging in.

1    And so I think that they're engaging in

2  some sort of a make work to make this more difficult

3  than it really needs to be in creating a manual

4  privilege log.  I mean, if you engage a vendor, you

5  could probably do this very quickly -- he or she could

6  do this very quickly and do an automatic privilege

7  log.  So I -- I just feel like we're taking time to

8  end up doing work that is not ultimately fruitful.

9    I also would note that I think they are

10  using a sword -- the privilege as a sword and a shield.

11  All of the seven documents that they produced are

12  communications with the defendants, emails that

13  Mr. Signore has sent to the defendants.  And yet he

14  is also selectively withholding three emails of

15  defendants who he doesn't identify.

16    So it's very confusing why he can produce some

17  communications with his sources and then withhold other

18  communications with his sources.

19    So there are so many more questions than

20  answers and I'm sorry that this is a bit rambling, but

21  it's difficult for me to know even where to start because

22  we just have a complete dearth of any reliable information.

23    THE COURT:  Mr. Gordon, I will let you respond,

24  but I -- you know, I have to agree with Ms. Governski on

25  some of her points.

1          I mean, the fact that we can't get even --

2    you know, I can't even get a clear answer on how much

3    you gathered and what you've reviewed.  I don't have

4    any confidence that this search has been done properly.

5          Now, certainly you are not required to engage

6    a vendor to do this, but having -- not having any answers

7    about -- any specific answers about the scope of your

8    search, what's been gathered and then I -- I tend to

9    agree if there was an agreement that you don't need to

10   produce stuff that was sent and not responded to, why

11   are we taking two weeks to go through all of that stuff?

12          What -- what is it that you need to do if

13   that's been agreed that you don't have to do it?

14          What is -- what's remaining to look at and --

15   and -- and I -- and if the answer is, well, nothing

16   because we're not producing the sent emails, then I

17   think we need to go back and make sure we've actually

18   done the search that needs to be done because I -- we

19   talked about this two weeks ago and the -- the first

20   issue -- the first item of business for the parties was

21   to talk about scope of the search, gather the documents,

22   you review them and produce the privilege log.

23          But you came into that first hearing with

24   confidence that some things didn't even exist, which

25   suggested to me that you had already done a search.

1    You had already gathered the information.

2            But now it sounds like you don't even know

3    what's been gathered and we're still gathering it and

4    it's not being done -- it's -- it's -- it's not being

5    done in an efficient manner.

6            So Mr. Gordon, what -- what -- I'm happy to

7    hear your response to what Ms. Governski said.  I think

8    we're -- I think we've gotten off track, significantly

9    off track here.  So please respond and let me know what

10   you think, but we're going to have to get this -- we're

11   going to have to get this back on track and we're going

12   to get, as Ms. Governski said as well, a privilege log

13   that's properly -- properly assembled.

14           At the last hearing, I mentioned the Middle

15   District of Florida Civil Discovery Handbook has very

16   detailed recommendations for how you do that.  I agree

17   with her that this is -- I don't think this is properly

18   done.

19           And the last thing I'll say, Mr. Gordon, is

20   that privilege -- I mentioned this at our first hearing,

21   you have to claim it specifically and you have to do it

22   timely and -- and what -- what we risk here -- what --

23   what Popcorned Planet risks here, if we can't get this

24   right and it can't be done properly, it risks waiving a

25   privilege because that's what happens when it's done

1    specifically and it's not done timely.

2            So start me off, Mr. Gordon, let's talk

3    about -- let's -- let's get some definite answers here.

4    What -- what have you done and what remains to be done

5    and if you already agree that that -- those emails don't

6    need to be produced, what is it that you're actually

7    doing for the next two weeks?

8            MR. GORDON:  We have had three employees,

9    Judge, three employees of Popcorned Planet spending the

10   better part of their day every single day going through

11   emails, going through their computers, going through any

12   and all potential reach-outs or -- or invitations to

13   speak to people who are on the set of It Ends With Us.

14           And I would respectfully suggest, Judge, that

15   it's somewhat nonsensical or absurd to suggest that I

16   have to log each and every text message.  It is a -- the

17   log is a categorical enumeration or -- or -- or itemization

18   of communications that have been made.

19           I don't have to itemize every word nor do I

20   have to itemize every message.  For example, if there's

21   a thread of communications over the course of a two-week

22   period of time, I can identify that as one categorical

23   element within the privilege log, which we have properly

24   done.

25           Again, I apologize to the Court for not being

1  a -- a technocrat, but I will tell you in no uncertain

2  terms that we have reviewed hundreds and hundreds and

3  hundreds of pages, whether they be by virtue again

4  copies of text messages, fax, copies of -- of -- of

5  telephone records, email communications, just a tremendous

6  amount of information.

7          And perhaps I don't have the sufficient

8  sophistication to be able to respond properly to the --

9  to the query by the Court, Judge.  So I apologize if

10  I'm -- if I'm -- if I'm getting a little bit inpatient.

11          But I can -- I can tell the Court in no

12  uncertain terms that we have reviewed every piece of

13  material that has been provided to us and all of the

14  material that has been provided to us has been confirmed

15  to -- to include all of the parameters as -- as set forth

16  by Ms. Governski in her two-page email utilizing the

17  proper search terms and otherwise providing as much

18  response as we possibly can.

19          Again, Judge, I -- I would respectfully request

20  the Court perform an in camera inspection of the materials

21  enumerated and itemized in the privilege log and I think

22  that the -- the question that the Court is posing to me

23  will be answered by virtue of that review.

24          THE COURT:  Well, I -- I don't think we're

25  getting anywhere with this.

1          The -- the question that was asked at the

2    beginning and that we have talked about and I -- I

3    asked -- I have been asking for specific answers is

4    the scope of the search, what you've done and what

5    remains to be done and to respond and say that we've

6    reviewed hundreds and hundreds of documents just --

7    it's not sufficient.

8          You're going to need to specifically describe

9    the search that's been done and -- this -- this kind of

10   stuff has to be done methodically and carefully.  It

11   doesn't have to be done by a vendor, but it does have

12   to be done cleanly and with oversight by counsel and

13   you have to have an answer for what the scope of the

14   search was, what you've gathered, what the universe of

15   documents -- I mean, that was one of my first questions

16   to you two weeks ago, Mr. Gordon, is what -- what have

17   you reviewed?  What's the scope of information you've

18   reviewed?

19         We need to know specifics and, you know, I'm

20   not saying that what has been done -- I'm not -- I'm not

21   concluding that what has been done is insufficient.  I

22   just don't have the information to conclude that it is.

23         And I also -- I -- I'm -- look, you can --

24   you can assert what you want to assert about claiming

25   privilege specifically, but I'm confident that you have

 1  to do it specifically and I'm confident the privilege

 2  log you presented is insufficient.

 3          So -- and I -- and I will -- I am going to

 4  order you -- I'm going to order you to produce these

 5  documents in camera, but what I'm also going to order

 6  you to do is provide something in writing explaining

 7  exactly what the scope of the search is you've done,

 8  who's done it and -- and who's -- and how that -- how

 9  that is being conducted.

10          So I want to know specifics and I want you

11  to put it in writing so that we can have confidence

12  that Popcorned Planet has -- has done what needs to be

13  done here.

14          Again, I'm not telling you need to hire a

15  vendor to do this.  That's a good idea, but you don't

16  have to do that, but you do have to -- you do have to

17  assure me that you've done the search and that you've

18  gathered the information and that we're not just -- it

19  doesn't feel like we're moving forward.  It feels like

20  we're back in the same conversation we had on day one.

21  And so I need specifics --

22          MR. GORDON:  Respectfully --

23          THE COURT:  I need specifics.  Nope.  I --

24  I -- just hold off for a second.

25          So I'm going to order you to do that.  I'll

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1  order you to do it by the middle of next week.  I'm

2  going to give -- I'm going to give an extension, but

3  I need to know what it's for.

4          So you need to explain what -- what is it

5  we're doing over the next two weeks.  If it's not --

6  if it's not reviewing these sent emails that got no

7  response, what -- what is it that you're continuing

8  to do?

9          MR. GORDON:  I -- I would suggest the following,

10  Judge.  And again, I'm happy to put it in writing pursuant

11  to this Court's honorable ruling.

12          I can tell you there have been five people --

13  Kim, Michelle, Mr. Signore, myself and Mr. Mitchell --

14  who have been doing all of the work.

15          If -- if -- if this Court or -- or opposing

16  counsel feels that this is insufficient, then I would

17  certainly -- again, we're happy to hire a vendor.  The

18  problem is is pursuant to Rule 45, this is becoming an

19  extremely expensive and unduly burdensome effort again

20  for a third party who is not a party to the underlying

21  action.

22          Again, if there's some suggestion that I'm

23  being disingenuous or that -- or that time, energy and

24  effort hasn't been properly utilized, I would invite the

25  opposing counsel to coordinate for a vendor of their

1    choice at their expense to review all of these materials.

2            THE COURT:  Okay.  I asked you a question

3    about what you were going to be doing in the two weeks.

4            Can you -- can you provide me a response to

5    that, please?

6            MR. GORDON:  Yes, your Honor.

7            We are continuing to review the documentation

8    and the communications with individuals other than party

9    defendants and their agents, people who are third parties

10   are crew members or individuals who may have been on set

11   and had -- and specifically reviewed communications either

12   external outreach communications from Popcorned Planet to

13   these individuals, whether they have responded to or not

14   after February of 2018.

15           THE COURT:  All right.  Well, counsel for

16   Ms. Lively said that there was a stipulation that you

17   didn't need to be looking through sent emails, that it

18   was more important to look at the response and also

19   they needed to not only be looking at documents that

20   are emails that were sent externally, but internal

21   communications.

22           Let me just -- let me just pause here for a

23   moment, Mr. Gordon --

24           MR. GORDON:  Sure.

25           THE COURT:  -- because I asked you at the

1  first hearing whether there was any objection to the

2  scope of the request and -- and you said there was no

3  objection.  I have no objection to the scope of the

4  request.  No concern.  You didn't have any problem with

5  the scope of the request.  You're only your only concern

6  was with privilege.

7        MR. GORDON:  And relevance, and relevance, your

8  Honor.

9        THE COURT:  No, no.  Listen, I listened to the

10  hearing audio yesterday.

11        MR. GORDON:  Yes, your Honor.

12        THE COURT:  No concerns other than privilege.  It

13  was we had no concerns about the scope.

14        Now, I hear you saying you have concerns about

15  the scope and the burden, which is something that should

16  have been raised when I asked you do you have a concern

17  about the scope of these requests because -- and if you

18  had a concern with the scope of the search, which you

19  conferred about with Ms. Governski, the next hearing you

20  all came back and said you all had an agreement about

21  the scope of the search.  In fact, Ms. Governski had been

22  professionally courteous in narrowing the scope of the

23  search.  Now, I'm hearing something completely different.

24        MR. GORDON:  Your Honor, we have an email that

25  Ms. Governski provided me with parameters.  In order to

 1   properly fulfill those parameters, it requires us to

 2   review any and all documentation, including that

 3   documentation and communication for which there may

 4   be no response.  I appreciate the fact --

 5          THE COURT:  She's already said she doesn't

 6   want that.  She said she's --

 7          MR. GORDON:  But I don't know if --

 8          THE COURT:  -- willing -- she's willing to

 9   tell you don't have to do that, Mr. Gordon.  You don't

10   have to do that.

11          MR. GORDON:  Your Honor, I --

12          THE COURT:  She stipulated to that.

13          MR. GORDON:  Your Honor, but in order for me

14   to determine whether or not there's been a response,

15   I still have to review those documents.

16          MS. GOVERNSKI:  Can I just respond to that,

17   your Honor?

18          Because I think, like, the amount that they

19   probably charge for their review is significantly more

20   than it would cost a vendor to just exclude anything

21   that's not responded to.  Like, we have technology that

22   does that, that doesn't require spending God knows how

23   many attorneys' hours reviewing things that have not

24   been responded to.

25          And one of the things that Mr. Gordon said

1  is that our -- our client should bear the cost of the

2  vendor.  I'm pretty certain that the cost of a vendor

3  would be less than the alleged $10,000 they claim to

4  have already been spent because a vendor can actually

5  do a proper collection and a proper search and reduce

6  the universe.

7        So I -- I understand that your Honor, you

8  know, has -- has conveyed that a vendor is not necessary,

9  but we would suggest that it's not fair to unnecessarily

10  increase the cost by doing a manual document-by-document

11  review or improperly applying search terms than -- than

12  even getting estimates for a vendor who could probably

13  do this much less expensively.

14        And I also would note Mr. Signore has said he

15  already has engaged in a collection of his text messages.

16  So at a minimum, Mr. Gordon should be able to answer how

17  search terms have been applied to that, where the universe

18  of extracted text messages lives, how many hit on search

19  terms.

20        We should actually be able to get a hit report

21  of how many of his text messages hit on the search terms.

22  Google has a very easy take out feature.  Like, anyone

23  can use it.  It -- it has step-by-step guides on how you

24  can extract your email.  Like, all of these things are not

25  time consuming or expensive, but they haven't been done

1   and instead they've relied on --

2      (Unidentified inaudible voices.)

3      THE COURT:  Mr. Gordon -- I'm sorry.  I'm

4   sorry.

5      MR. GORDON:  Which -- which is privileged.

6      THE COURT:  Hold on, Ms. Governski.

7      Mr. Gordon, can you please mute if you're going

8   to be talking --

9      MR. GORDON:  I apologize.

10      THE COURT:  -- to someone else?

11      MR. GORDON:  I apologize, your Honor.

12      THE COURT:  Go ahead, Ms. Governski.

13      MS. GOVERNSKI:  So they've chosen to engage in

14   this manual one-by-one review, making their lawyers review

15   it.  There are much simpler ways that we use every single

16   day and they're probably less expensive to their client,

17   Mr. Signore.

18      The other thing is he says you don't have to

19   log text messages, like, one-by-one.  Well, like, what

20   is generally done and what we've done in this litigation

21   is that if you do a proper collection, they are then in

22   24-hour increments and you log the 24-hour increments

23   because each 24-hour increment is preserved as its own

24   document.

25      So they -- because of their inability to do

1  this, it indicates they haven't actually done what --

2  like a proper extraction that would allow them to log

3  it in a proper way.

4          He talks about going through all these phone

5  records.  Well, phone records are not on the log and

6  they also haven't been produced.  So, like, I don't

7  know what these phone records are, but those also were

8  missing.

9          So -- and the last thing I'll say, your Honor,

10 he said he's reviewed what has been provided to us and

11 I think that that is the core problem here.  They are

12 reviewing what is being provided to them without any

13 oversight of -- of what has been collected and what has

14 been searched before the provision of that information to

15 them.

16         And so even this in camera review, like, okay,

17 your Honor can do an in camera review of the selected

18 materials that their client happened to have given to them

19 that they happen to put on a list, but that really doesn't

20 tell us very much because if -- you know, if it's garbage

21 in, it's garbage out.  Like, who knows what they've been

22 given and without -- without their being a proper collection

23 and search overseen by attorneys.

24         THE COURT:  Well, I do think we need to get to

25 the bottom of that and I -- I am willing to let Mr. Gordon

1  again file something with the Court that describes the

2  search that has been done, how it's been done and who

3  it's been done by.

4          And, you know, when we started out this hearing,

5  Mr. Gordon said that counsel was reviewing all of the

6  documents that were provided, but I do think, Mr. Gordon,

7  that we need to have more specifics about what has been

8  done and how it's been done so that we can have confidence

9  in the search.

10          MR. GORDON:  Yes, your Honor.

11          THE COURT:  So let me recap, Mr. Gordon.

12          You are looking at post-2025 communications

13  with people that are not the defendants in the case, is

14  that right?

15          MR. GORDON:  Post-February 18th, yes, your

16  Honor.

17          THE COURT:  Okay.  And that as to the universe

18  of communications with the defendants, you believe that

19  you have either produced or logged everything?

20          MR. GORDON:  We believe it is all encompassing,

21  your Honor.

22          THE COURT:  Okay.  And you believe that the

23  search for those materials has been complete?

24          MR. GORDON:  I -- I do, your Honor, based upon

25  our oversight, yes.

 1          THE COURT:  Okay.  All right.  So what I'm

 2  going to do is I'm going to enter an order directing

 3  you all to provide -- we're going -- we're going to

 4  focus for now on the search for communications with the

 5  defendants and that -- I believe I said that was across --

 6  that was 2024 and anything past February 18, 2025, is

 7  that right?

 8          MR. GORDON:  Correct, your Honor.

 9          THE COURT:  Okay.  So we're going to start

10  there and I will -- I will craft an order directing you

11  to provide information specifically about the scope of

12  the search that's been done and the review.

13          And I'm also going to direct you provide the

14  items in the privilege log for an in camera review.

15  That should be fairly quick, I imagine, getting those

16  sent over.  So I'm going to direct that being done.

17          Can it be done Monday?

18          MR. GORDON:  Yes, your Honor.

19          I believe we have -- we have all of that in

20  our possession currently.  So, yes, Monday will be fine.

21          THE COURT:  Okay.  All right.  So we're going

22  to do that.

23          We're going to have another status in this

24  case.  I'm going to have you file your document about

25  the scope of the search by next Wednesday and we'll

1   have another status next Friday -- or actually Thursday.

2   Let me look at Thursday.  Yeah.  Thursday.

3           MR. GORDON:  Thursday, the 13th, your Honor?

4           THE COURT:  That's right.

5           MR. GORDON:  Okay.  What time, your Honor?

6           THE COURT:  I am available at 11:00 and 1:00 --

7   1:30 on.

8           MR. GORDON:  Well, unfortunately 1:30 for

9   Popcorned Planet is not going to work, but 11:00 o'clock

10  would be fine, your Honor, if that's okay with opposing

11  counsel.

12          MS. GOVERNSKI:  11:00 would be hard for me.  I

13  could probably move things.

14          Would anything after 1:30 work, like, at 2:00

15  or at 3:00?

16          MR. GORDON:  It's probably going to be about

17  a two-hour hearing.  So 3:00 o'clock should work.

18          THE COURT:  Okay.

19          MR. GORDON:  If the Court is available.

20          THE COURT:  Yes, I am.

21          Okay.  So 3:00 p.m. on the 13th.  All right.

22  We'll get that set.

23          All right.  And then I will -- I will enter an

24  order granting the request for an extension, but I'm going

25  to check in on that matter next week.

1          And, Mr. Gordon, again, I want to emphasize

2     that Ms. Governski's point that I don't want Popcorned

3     Planet spending time searching for materials that the

4     other side has agreed don't need to be produced.  So if

5     they are no longer responsive to the subpoena, so they

6     don't need to be produced and they don't need to be

7     logged.  Those are the sent emails that are not responded

8     to.

9          Those sort of outreach emails, those are not --

10    I think a response likely would be considered still

11    responsive under that stipulation, but the sent emails

12    that did not receive a response are not going to be

13    responsive any longer and don't need to be reviewed and

14    logged.

15          MR. GORDON:  May I request some additional

16    guidance, Judge?

17          THE COURT:  You may.

18          MR. GORDON:  Given our -- given our review of

19    documents -- for example, there are a number of responses

20    where it's no comment or I would like to comment, but

21    unfortunately I have an NDA or things of that nature,

22    would that also be included within the documents that

23    we no longer need to produce or records?

24          THE COURT:  Ms. Governski, it was your

25    stipulation.

1         MS. GOVERNSKI:  Yeah.  We already talked

2  about this, that if it's not a substantive response --

3  substantive being something other than a no comment,

4  that we would be okay in the first instance of you not

5  logging this, but not if it's from a communication with

6  any of the defendants.

7         MR. GORDON:  Understood.

8         And again, I apologize for pushing the point,

9  your Honor, but, you know, I want to be careful there

10 because I don't want to otherwise make disclosures that

11 would be improper, but if someone responds, I'd love to

12 speak with you, but I'm -- a fear reprisal, would that

13 be something that is no longer on the table or would I

14 have to log or otherwise provide that?

15        THE COURT:  I think that sounds substantive

16 to me.

17        MR. GORDON:  Okay.

18        MS. GOVERNSKI:  The -- the other thing, your

19 Honor, I just wanted your clarity on is, you know, again,

20 there were no other objections to the subpoena.  It sounds

21 like all of these discussions are relating to Request

22 No. 6 and then none of the others, including where

23 Request 4, where we asked for communications regarding

24 their -- Mr. Signore's -- regarding Mr. Signore's content

25 creation, you know, relevant to the -- to the underlying

1   events here.

2       And I -- I haven't gotten any idea on whether

3   they're reviewing those communications.  But, of course,

4   his communications with his own staff about this or about

5   the calls, those also would be responsive.  I'm just not

6   clear where those are falling here and I don't want them

7   to be left by the wayside.

8       THE COURT:  Mr. Gordon?

9       MR. GORDON:  Yeah.  We can continue to search

10  those as well, Judge, based upon what -- again, our

11  understanding is that there are no documents that otherwise

12  be responsive.  There may have been direct discussions,

13  but there's -- again, between employees of Popcorned

14  Planet, from Andy or -- or some of his again contractors

15  or employees, but in terms of documentation or otherwise

16  memorialization of that, no.  These people, they work

17  in the same location and they speak on a daily basis.

18      THE COURT:  Okay.  All right.  Well, I think

19  what we'll -- what we'll have to do once we get past

20  the -- this privilege issue, we are going to -- because

21  the privilege issue has been raised on a motion to quash

22  and so that needs to be decided first, I think, but then

23  we need to have responses to the actual -- a response to

24  the subpoena.  So we can deal with that then, but I --

25  I take Mr. Gordon at his word that he is searching for

1    all responsive material to the subpoena.

2            All right.  So we'll get orders entered today

3    and then we will talk again on Thursday, November 13th

4    at 3:00 p.m.

5            MR. GORDON:  Thank you, your Honor.

6            MS. GOVERNSKI:  Thank you your Honor.

7            THE COURT:  All right.  Thank you.  We'll be

8    adjourned.

9                    (Whereupon, the Court adjourned

10                    at 10:45 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1  UNITED STATES DISTRICT COURT   )

2                                 )

3  MIDDLE DISTRICT OF FLORIDA     )

4

5                  REPORTER TRANSCRIPT CERTIFICATE

6

7          I, LORI ANN CECIL VOLLMER, Official Court Reporter

8  for the United States District Court, Middle District of

9  Florida, certify pursuant to Section 753, Title 28, United

10 States Code, that the foregoing transcript is a true and

11 correct transcription of the stenographic notes taken by the

12 undersigned in the above-entitled matter, Pages 1 through 41,

13 and that the transcript page format is in conformance with

14 the regulations of the Judicial Conference of the United States

15 of America.  I further certify that I am not attorney for, nor

16 employed by, nor related to any of the parties or attorneys to

17 this action, nor financially interested in this action.

18          IN WITNESS WHEREOF, I have set my hand at Tampa,

19 Florida, this 18th day of January 2026.

20

21              /s/ Lori Ann Cecil Vollmer

22              Lori Ann Cecil Vollmer, CSR, RPR
                United States Court Reporter
23

24

25

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION